## United States District Court, Northern District of Illinois ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1099 | **DATE** | 11/12/2002 |
| **CASE TITLE** | Sherman Cotton vs. PrivateBank and Trust Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order.   PrivateBank's motion to compel the production of documents [84-1] is denied

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | NOV 13 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 02 NOV 12 PM 4: 13 | 11/12/2002 date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERMAN COTTON, as Independent Executor Of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust, as Amended, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 01 C 1099 |
| PRIVATEBANK AND TRUST COMPANY, | ) ) ) | Magistrate Judge Morton Denlow |
| Defendant/Third-Party Plaintiff, | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on PrivateBank and Trust's ("PrivateBank") motion to compel the production of documents. The issues for decision are (1) whether the Annunzio-Wylie Anti-Money Laundering Act ("Act") and related regulations prohibit the disclosure of a suspicious activity report ("SAR"), and (2) whether the Act and regulations prohibit the production of the documentation supporting a SAR. For the reasons stated herein, PrivateBank's motion to compel is denied.

### I. BACKGROUND FACTS

**A. THE LITIGATION.**

The following background facts are alleged in the pleadings. Loy King settled a personal injury lawsuit via the creation of a structured settlement agreement with SBU, Inc. ("SBU"). The agreement called for the creation of a trust to be administered by PrivateBank.

Plaintiff, Sherman Cotton ("Cotton"), is the Independent Executor of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust. Pursuant to the agreement, PrivateBank, as the trustee of the trust instrument created by SBU, was required to make periodic payments to Cotton. In August 1996, PrivateBank resigned as trustee and Flag Finance Corporation ("Flag") took over the duties of making payments to Cotton on SBU's behalf.

Due to its resignation, PrivateBank transferred securities intended to fund Cotton's payments to an account at Crews & Associates, Inc. ("Crews") in the name of Flag as trustee for SBU. Subsequently, Crews transferred securities from the Flag trustee account to an account at CIBC World Market Corp. ("CIBC") in the name of SBU. Securities held by CIBC were then liquidated by SBU's principal, James Gibson, and used to purchase supermarkets, other real estate, and personal luxury items. At some time during the preceding events, Cotton's structured settlement payments were discontinued.

Cotton filed a complaint against PrivateBank to recover monies owed due to the structured settlement arrangement with SBU. PrivateBank filed a third-party complaint against CIBC alleging that CIBC knowingly permitted the liquidation of securities from the SBU account that were to be used solely to fund payments under structured settlement agreements. Furthermore, PrivateBank contends that CIBC loaned money to Gibson and SBU on margin, took a pledge of the securities in return, and ultimately liquidated millions of dollars of earmarked securities to pay back these margin loans. PrivateBank further contends that subsequent to this last liquidation of funds, CIBC conducted an internal

2

investigation and decided to close SBU's account. This alleged investigation is the focus of the motion at hand.

## B. DISPUTED DISCOVERY REQUESTS.

On March 12, 2002, PrivateBank served a request for production of documents upon CIBC. CIBC objected to PrivateBank's request numbers 28, 29 and 34 as follows:

> **Request No. 28:** All documents relating to any inquiry or investigation or review conducted by CIBC, including by CIBC's compliance department, of any account of SBU, Flag Finance or Gibson at CIBC at any time.
>
> **Response:** CIBC objects to Request No. 28 on the grounds that it is vague, overbroad, unduly burdensome, seeks documents and information protected by the attorney-client privilege and the work product doctrine, and is not reasonably calculated to lead to the discovery of admissible evidence.
>
> **Request No. 29:** All suspicious activity reports filed by CIBC at any time relating in any way to SBU, Flag Finance or Gibson, and all documents of any kind relating thereto.
>
> **Response:** Subject to and without waiving the foregoing objections, pursuant to 31 U.S.C.A. § 5318(g)(2) and 12 C.F.R. § 21.11(k), CIBC is legally prohibited from disclosing the existence and contents of any suspicious activity report.
>
> **Request No. 34:** All documents relating to any internal or outside investigation, review, inquiry, examination or audit by any person, entity or regulatory or enforcement authority of any kind or nature (including CIBC's inside or outside accountants or auditors or consultants), referring or relating in any way to the accounts in question.
>
> **Response:** See response to Request No. 28.

Subsequently, CIBC produced a Privilege Log which referenced the documents presently in dispute.

3

| CIBC 5788-5791 | 11/13/98 | Letter and attachments, which CIBC is legally prohibited from describing further. |
| CIBC 5792-5803 | Various Dates | Additional handwritten notations, emails and drafts in connection with letter marked as CIBC 5788-5791, which CIBC is legally prohibited from describing further. |

The first document, labeled CIBC 5788-5791, PrivateBank believes to constitute a suspicious activity report. The second, labeled CIBC 5792-5803, PrivateBank believes to be documentation supporting the supposed SAR.

In addition to the pleadings submitted by the parties, this Court received a letter dated September 6, 2002, from Judith R. Starr, Chief Counsel at the Financial Crimes Enforcement Network ("FinCEN"). Copies were served to all parties as well as to the Office of the Comptroller of the Currency ("OCC"). FinCEN and the federal banking supervisory agencies have promulgated regulations protecting the confidentiality of SARs. FinCEN objects to the production of any documentation which violates the Act and related regulations.

## II. MOTION TO COMPEL ANALYSIS

This motion presents the following issues: 1) whether a SAR may be produced during discovery in a civil action despite the Annunzio-Wylie Anti-Money Laundering Act ("Act") and several regulations prohibiting disclosure; and 2) whether documentation supporting a

4

SAR may be produced despite the aforementioned prohibition. This Court will first discuss the Act and the regulations, and will then address the two issues presented by the motion to compel.

A. **THE ANNUNZIO-WYLIE ANTI-MONEY LAUNDERING ACT AND THE APPLICABLE REGULATIONS.**

In 1992, Congress passed the Annunzio-Wylie Anti-Money Laundering Act, giving the Secretary of the Treasury the power to require banks and other financial institutions to report suspicious transactions to the appropriate authorities.[1] *Nevin v. Citibank,* 107 F. Supp. 2d 333, 340 (S.D. N.Y. 2000). In order to encourage financial institutions to report a wide range of possible criminal activity, the Act gave financial institutions and their officers, employees, and agents complete immunity from suit based on such reporting. *Id.*; 31 U.S.C. § 5318(g).

The Act provides in relevant part as follows:

(1) The Secretary may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation.
. . . .
(2)(A)(i) the financial institution . . . may not notify any person involved in the transaction that the transaction has been reported; and

(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported . . . .

31 U.S.C. § 5318(g)(1); 31 U.S.C. § 5318(g)(2)(A) (West Supp. 2002).

---

[1] The Act was passed as Pub. L. No. 102-550, 106 Stat. 4044, and is codified as amended in scattered sections of the United States Code.

The Act has been the subject of regulations promulgated by the Office of the Comptroller of the Currency ("OCC"), the Office of Thrift Supervision ("OTS"), and the Financial Crimes Enforcement Network ("FinCEN"). Both parties, PrivateBank and CIBC, believe that the OCC regulation, 12 C.F.R. § 21.11(k), governs this case. This regulation provides in part:

> SARs are confidential. *Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed* . . . and shall notify the OCC.

12 C.F.R. § 21.11(k) (2002) (emphasis added). However, because this case involves a broker-dealer affiliate of the bank holding company, which is subject to regulation by FinCEN and the Federal Reserve Board, the applicable regulation is 31 C.F.R. § 103.18 which states in relevant part:

> *[A]ny person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR*, except where such disclosure is requested by FinCEN or an appropriate law enforcement or bank supervisory agency, *shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed,* . . . and shall notify FinCEN of any such request and its response thereto.

31 C.F.R. § 103.18(e) (2002) (emphasis added).[2] The Act and supporting regulations show

---

[2]The pertinent language in both the FinCEN and the OCC regulations is identical. *See* 31 C.F.R. § 103.18(e) (2002); 12 C.F.R. § 21.11(k). Furthermore, that identical language appears in the regulation promulgated by the OTS. "SARs are confidential. *Any institution or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed,* . . . and shall notify the OTS." 12 C.F.R. § 563.180(d)(12) (2002) (emphasis added). As a result, this Court would reach the same conclusion regardless of which regulation applies.

6

an intent to keep SARs confidential. "Financial institutions are required by law to file SARs, but are prohibited from disclosing either that an SAR has been filed or the information contained therein." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2nd Cir. 1999).

## B. A SUSPICIOUS ACTIVITY REPORT IS NOT DISCOVERABLE.

PrivateBank relies upon *Dupre v. Federal Bureau of Investigation*. No. Civ. A. 01-2431, 2002 WL 1042073 (E.D. La. May 22, 2002). *Dupre* involved a lawsuit brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The court ordered production of information found in one part of a subject SAR which provides a narrative description of the plaintiff's transactions and communications with the bank involving the bad check in dispute. Ordering the information produced, the court reasoned that SAR section did not provide privileged or confidential information and that it "finds it difficult to believe there is anything contained in that section of the SAR which plaintiff does not already know." *Id.* at *2.

Although *Dupre* involved 31 C.F.R. § 103.18, this Court does not find the reasoning persuasive. Nothing in the Act or regulations prohibits the disclosure of the underlying factual documents which may cause a bank to submit a SAR. Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR. For example, if a wire transfer of funds is described in a SAR as a suspicious activity, the wire transfer transaction remains subject to discovery. Therefore, the better approach prohibits disclosure of the SAR while making clear that the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process.

While *Dupre* interprets §103.18(e), there are other cases interpreting 12 C.F.R. § 21.11(k) and 12 C.F.R. § 563.180(d). Interpretation of these regulations is applicable and necessary due to the almost identical language used in all three regulations.[3] The court *In Re Mezvinsky* denied a motion to compel the production of an SAR sought in a subpoena directed to a non-party. No. 00-10745DWS, 2000 Bankr. LEXIS 1067, at *9 (E.D. Pa. 2000). The Court observed that the Code of Federal Regulations, specifically 12 C.F.R. §4.31 et seq., provides a mechanism for litigants to request the OCC to provide them with access to SARs. However, the Court applied 12 C.F.R. § 21.11(k) which specifically directs a bank to "decline to produce the SAR or to provide any information that would disclose that the SAR has been prepared or filed, . . . ." *Mezvinsky*, 2000 Bankr. LEXIS 1067, at *4.

The court in *Weil v. Long Island Savings Bank* held that 12 C.F.R. §563.180(d)(12) prohibits disclosure of SARs or their content, even in the context of discovery in a civil lawsuit, however, supporting documentation is discoverable. 195 F. Supp. 2d 383, 389 (E.D. N.Y. 2001). The court further held that the confidentiality privilege created by the Act and the regulations is not qualified and is not subject to waiver by the financial institution. *Id.* This Court agrees.

Congress and the regulatory agencies made SARs privileged, and courts have refused to order an exception to that privilege, even if necessary to raise an affirmative defense. *Gregory v. Bank One, Indiana, N.A.*, 200 F. Supp. 2d 1000, 1003 (S.D. Ind. 2002). In

---

[3]*See supra* note 2.

*Gregory*, the defendant sought to submit under seal information barred by the Act and the regulations in order to raise an affirmative defense. *Id.* at 1000-01. The court found that the Act created an unqualified discovery and evidentiary privilege which could not be waived by the reporting financial institution. *Id.* at 1002.

PrivateBank argues that because Gibson and his counterparts pleaded guilty over three years ago, the risk of "the person involved in the transaction" discovering the existence of a SAR is mollified. Although it may be irrelevant whether Gibson discovers the existence of a SAR, the refusal to produce SARs is supported by the legislative history. In adopting 12 C.F.R. § 563.180(d)(12), the regulating agency, the OTS, was "encouraged to adopt regulations that would make SARs undiscoverable in civil litigation." *Weil*, 195 F. Supp. 2d at 389. Permitting the release of any SAR through civil discovery could harm the law enforcement interests the Act was intended to promote. Release of an SAR could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity. Furthermore, banks may be reluctant to prepare an SAR if it believes that its cooperation may cause its customers to retaliate. Moreover, the disclosure of an SAR may harm the privacy interests of innocent people whose names may be contained therein.

Finally, PrivateBank argues that the statutory scheme would not be thwarted by production of any SAR or related documents because the language of the statute prohibits disclosure of a SAR only to any person involved in the transaction. PrivateBank contends

that the regulations are inconsistent with the statute and therefore unenforceable. This issue has been addressed, and it has been held that "[f]ederal regulations should be adhered to and given full force and effect of law whenever possible." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). "[I]n order to be valid [regulations] must be consistent with the statute under which they are promulgated." *U.S. v. Larinoff*, 431 U.S. 864, 873 (1977). 12 C.F.R. § 21.11(k) has been held to be valid and consistent with U.S.C. § 5318(g)(2). *Gregory v. Bank One, Indiana, N.A.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) (citing *Weil v. Long Island Savings Bank*, 195 F. Supp. 2d 383, 388 (E.D. N.Y. 2001)). This Court agrees.

C. **DOCUMENTATION SUPPORTING A SAR IS PRIVILEGED INFORMATION BECAUSE IT COULD DISCLOSE THE EXISTENCE AND REVEAL THE CONTENT OF A SAR.**

12 C.F.R. § 103.18(d) sets the following procedure for retention of records:

> (d) Retention of records. A bank shall maintain a copy of any SAR filed and the original or business record equivalent of any supporting documentation for a period of five years from the date of filing the SAR. Supporting documentation shall be identified, and maintained by the bank as such, and shall be deemed to have been filed with the SAR. A bank shall make all supporting documentation available to FinCEN and any appropriate law enforcement agencies or bank supervisory agencies upon request.

There are two types of supporting documents. The first category represents the factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business. The second category is documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself. These are not to be produced because they would disclose whether a SAR has been prepared or filed.

### III. CONCLUSION

**PrivateBank's motion to compel is denied.** CIBC will not be compelled to produce documents labeled CIBC 5788-5791, nor will it be compelled to produce documents labeled CIBC 5792-5803 with the possible exception of the handwritten notes on CIBC 5795.

With respect to these notes, CIBC shall produce any handwritten notes which were prepared contemporaneously with the disputed business transactions and which were not prepared for the purpose of investigating or drafting a possible SAR. CIBC shall provide the Court within seven days an *ex parte* explanation of the handwritten notes on CIBC 5795 and whether it believes any of those notes should be produced consistent with this order.

**SO ORDERED THIS 12th DAY OF NOVEMBER, 2002.**

_____
Morton Denlow
United States Magistrate Judge

**Copies Mailed To:**

Terrence E. Leonard
Terrence E. Leonard, Chartered
100 West Monroe Street
Suite 1310
Chicago, IL 60603
Attorney for Plaintiff

W. David Wells
Michael J. Morris
Catherine A. Schroeder
Thompson Coburn
One Firstar Plaza
St. Louis, MO 63101
Attorneys for CIBC World Markets

Donald B. Hilliker
Derek J. Meyer
Benson K. Friedman
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606
Attorneys for Crews & Associates, Inc.

Coreen S. Arnold
District Counsel
U. S. Department of Treasury,
 Comptroller of the Currency
440 South LaSalle Street, Suite 2700
Chicago, IL 60605

Thomas P. Walsh
Chief, Civil Division
Office of U. S. Attorney
219 South Dearborn
Suite 500
Chicago, IL 60604

David M. Allen
Jeffrey E. Schiller
Rachel T. Nguyen
Schuyler, Roche & Zwirner, P.C.
130 East Randolph Street, Suite 3800
Chicago, IL 60601
Attorneys for Plaintiff

Larry W. Burks
Friday, Elridge & Clark
2000 Regions Center
400 West Capitol
Little Rock, AR 72201
Attorney for Crews & Assocaites, Inc.

Michael S. Poulos
Charles Lynn Lowder
Piper, Marbury, Rudnick & Wolf
203 North LaSalle Street, Suite 1800
Chicago, IL 60601-1292
Attorneys for BDO Seidman

David L. Doyle
James V. Garvey
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
Attorneys for PrivateBank & Trust Co.

Judith R. Starr
Chief Counsel
Department of the Treasury
Financial Crimes Enforcement Network
P. O. Box 39
Vienna, VA 22183