IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED-ED4

03 JAN 27 PM 2: 35

CLERK
U.S. DISTRICT COURT

SHERMAN COTTON, as Independent
Executor of the Estate of Loy E. King, Jr. and
Trustee of the Loy E. King, Jr. Living Trust,
as amended,

        Plaintiff,

v.

PRIVATEBANK AND TRUST COMPANY,

        Defendant.

**DOCKETED**

**JAN 2 9 2003**

No. 01 C 1099

Judge Ronald Guzman

Magistrate Judge Denlow

## NOTICE OF FILING

TO:    See Attached Service List

PLEASE TAKE NOTICE that on the 27th day of January 2003, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, **PRIVATEBANK AND TRUST COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY DEFENDANT LEWIS, RICE & FINGERSH, LC'S MOTION FOR JUDGMENT ON THE PLEADINGS,** a true and correct copy of which is attached hereto and herewith served upon you.

Dated: January 27, 2003

THE PRIVATEBANK AND TRUST
COMPANY

By:_____
        One of Its Attorneys

David L. Doyle
James V. Garvey
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
(312) 609-7500

CHICAGO/#812186.1

134

## SERVICE LIST

Terrence E. Leonard, Esq.
TERRENCE E. LEONARD, CHARTERED
100 West Monroe Street
Suite 1310
Chicago, Illinois 60603

W. David Wells, Esq.
THOMPSON COBURN
One Firstar Plaza
St. Louis, Missouri 63101

Donald B. Hilliker, Esq.
Benson K. Friedman, Esq.
MCDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, Illinois 60606

Kendra Johnson Panek, Esq.
John N. Scholnick, Esq.
ALTHEIMER & GRAY
10 S. Wacker Drive
Chicago, IL 60606

Jeffrey D. Colman, Esq.
Gregory M. Boyle, Esq.
Thomas P. Monroe, Esq.
JENNER & BLOCK, LLC
One IBM Plaza
330 N. Wabash Avenue
45th Floor
Chicago, IL 60611

David M. Allen, Esq.
Jeffrey E. Schiller, Esq.
Rachel T. Nguyen, Esq.
SCHUYLER, ROCHE & ZWIRNER, P.C.
130 E. Randolph Street, Suite 3800
Chicago, Illinois 60601

Larry W. Burks, Esq.
FRIDAY, ELDREDGE & CLARK
2000 Regions Center
400 West Capitol
Little Rock, Arkansas 72201

Michael S. Poulos, Esq.
Charles Lynn Lowder, Esq.
Amy J. Collins, Esq.
Catherine J. Casey, Esq.
PIPER MARBURY RUDNICK & WOLFE
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601-1292

Paul J. Puricelli, Esq.
STONE, LEYTON & GERSHMAN, P.C.
7733 Forsyth Boulevard, Suite 500
St. Louis, Missouri 63105

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copies of the foregoing **PRIVATEBANK AND TRUST COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY DEFENDANT LEWIS, RICE & FINGERSH, LC'S MOTION FOR JUDGMENT ON THE PLEADINGS**, were served on the below listed parties of record by depositing the same in the U.S. mail, first-class postage prepaid, at 222 North LaSalle Street, Suite 2600, Chicago, Illinois 60601-1003, by 5:00 p.m. on January 27, 2003, and by Hand-Delivery to: Gregory M. Boyle on January 27, 2003 at or before 5:00 p.m.:

Terrence E. Leonard, Esq.
TERRENCE E. LEONARD, CHARTERED
100 West Monroe Street
Suite 1310
Chicago, Illinois 60603

David M. Allen, Esq.
Jeffrey E. Schiller, Esq.
Rachel T. Nguyen, Esq.
SCHUYLER, ROCHE & ZWIRNER, P.C.
130 E. Randolph Street, Suite 3800
Chicago, Illinois 60601

W. David Wells, Esq.
THOMPSON COBURN
One Firstar Plaza
St. Louis, Missouri 63101

Larry W. Burks, Esq.
FRIDAY, ELDREDGE & CLARK
2000 Regions Center
400 West Capitol
Little Rock, Arkansas 72201

Donald B. Hilliker, Esq.
Benson K. Friedman, Esq.
MCDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, Illinois 60606

Michael S. Poulos, Esq.
Charles Lynn Lowder, Esq.
Amy J. Collins, Esq.
Catherine J. Casey, Esq.
PIPER MARBURY RUDNICK & WOLFE
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601-1292

Kendra Johnson Panek, Esq.
John N. Scholnick, Esq.
ALTHEIMER & GRAY
10 S. Wacker Drive
Chicago, IL 60606

Paul J. Puricelli, Esq.
STONE, LEYTON & GERSHMAN, P.C.
7733 Forsyth Boulevard, Suite 500
St. Louis, Missouri 63105

Jeffrey D. Colman, Esq.
Gregory M. Boyle, Esq.
Thomas P. Monroe, Esq.
JENNER & BLOCK, LLC
One IBM Plaza
330 N. Wabash Avenue
45th Floor
Chicago, IL 60611

James V. Garvey

FILED-E04

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS 03 JAN 27 PM 2: 36
EASTERN DIVISION

CLERK
U.S DISTRICT COURT

SHERMAN COTTON, as Independent
Executor of the Estate of Loy E. King, Jr. and
Trustee of the Loy E. King, Jr. Living Trust,
as Amended,

        Plaintiff,

v.

PRIVATEBANK AND TRUST COMPANY,

        Defendant/Third-Party
        Plaintiff,

v.

CREWS & ASSOCIATES, INC., *et al.*,

        Third-Party Defendants,

v.

BDO SEIDMAN, LLP.,

        Fourth-Party Defendant.

**DOCKETED**

JAN 2 9 2003

No. 01 C 1099

Judge Ronald Guzman

Magistrate Judge Morton Denlow

---

## PRIVATEBANK AND TRUST COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY DEFENDANT LEWIS, RICE & FINGERSH, LC'S MOTION FOR JUDGMENT ON THE PLEADINGS

    Defendant/Third-Party Plaintiff, The PrivateBank and Trust Company ("PrivateBank"),

submits this memorandum of law in opposition to the motion of Third-Party Defendant, Lewis,

Rice & Fingersh, LC ("Lewis Rice"), for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c). For the reasons discussed below, the motion should be denied.

134

## I.    INTRODUCTION

Lewis Rice's simple but inadequate basis for seeking a judgment on the pleadings appears to be the argument that because it represented and rendered legal advice to certain Third-Party Defendants with respect to the transactions involved in this case, it cannot have civil liability for its conduct.  The case law is clear, however, that admission to the bar does not extend free license to an attorney to knowingly tread upon the rights of others or to engage in unjustifiable conduct.  Nor does it entitle an attorney to participate in conduct, as here, that resulted in a client being sentenced to federal prison.  As the attorneys for Enron Corporation recently discovered,[1] attorneys are not protected from liability where, as amply alleged in PrivateBank's Second Amended Third-Party Complaint ("Third-Party Complaint"), they tortiously disregard the rights of others and do so in a manner that is unjustified and contrary to the best interests of their client.

PrivateBank has set forth factual allegations in its Third-Party Complaint indicating that Lewis Rice acted with actual malice and without justification.  These allegations are sufficient at the pleading stage to overcome any purported privilege claimed by Lewis Rice.  PrivateBank has, therefore, adequately pled claims upon which relief can be granted for contribution against Lewis Rice such that dismissal (or judgment on the pleadings) is unwarranted.  Opportunity for full discovery will eventually prove PrivateBank's allegations that Lewis Rice had the requisite knowledge, wrongful intent, and self-serving motivation, to establish liability, when it tortiously induced, acquiesced in, and/or participated with its clients and others to wrongfully use bonds held in trust for the benefit of Plaintiff (and others) to finance the purchase and operation of a

---

[1] *See generally Newby v. Enron Corp.*, No. H-01-3624, --- F.Supp.2d ---, 2002 WL 31854963, at *29-40, *76-89, *115-117 (S.D.Tex. Dec. 20, 2002) (relevant sections of the voluminous 150-page opinion are submitted herewith; the full decision, upon request by the Court, can be tendered).  PrivateBank acknowledges that the claims against the attorneys in the *Enron* case involved securities fraud violations.  That case is nevertheless instructive here to the extent the decision addresses the nature of attorney liability to third parties.

2

chain of supermarkets. At this stage of the proceedings, the Court clearly cannot say that there is no set of facts which exist that would support a claim for relief against Lewis Rice.

## II.    BACKGROUND

The Estate of Loy E. King, Jr. ("Plaintiff") has brought this action to recover losses allegedly suffered by Plaintiff in the form of missed payments due under a structured settlement arrangement. Plaintiff asserts that various acts and omissions of PrivateBank caused those losses. PrivateBank denies liability for Plaintiff's losses and, in turn, has filed a third-party action for contribution and/or indemnification against, among others, Lewis Rice. (*See* Second Am. Third-Party Compl. ("TPC") ¶ 13.)[2]

Lewis Rice is a St. Louis law firm that served as attorneys to third-party defendants Gibson, SBU, and Flag, with respect to SBU's and Flag's structured settlement business. (*Id.* ¶¶ 10, 25.) Lewis Rice also served as counsel to Gibson and another of his companies, Family Company of America ("Family Company"), in connection with the acquisition of a chain of supermarkets in St. Louis. (*Id.* ¶ 60.) Each of these Lewis Rice clients, together with the tortious involvement and unjustified complicity of Lewis Rice, engaged in a course of action to wrongfully convert and use structured settlement trust assets for purposes not provided for by the trust agreements and related documents, and for personal benefit.

---

[2] In addition to Lewis Rice, PrivateBank has filed a third-party action for contribution and/or indemnification against the following: SBU, Inc. ("SBU"), the entity that set up the structured settlement arrangement for Plaintiff; Flag Finance Corporation ("Flag"), the entity that succeeded PrivateBank as trustee of Plaintiff's structured settlement account; James R. Gibson, Marjorie and Jacquelyne Gibson (collectively, "Gibson"), the principals of SBU and Flag who apparently used the securities pledged to fund Plaintiff's structured settlement account for improper purposes; Crews & Associates, the securities broker-dealer to which PrivateBank transferred the subject securities in trust for credit to an account of Flag, as trustee for SBU; and CIBC World Markets Corporation, the securities broker-dealer to which the subject securities were further transferred from the Flag account into an account in the name of SBU, but without a trust designation, and which (through its agents Charles Lehnbeuter and others) took from Gibson a pledge of those securities as collateral for loans, sold bonds, and otherwise helped structure the acquisition of supermarkets through the wrongful use of bonds. (*See* TPC ¶¶ 17, 21-23, 35-37, 40-41, 43-45, 47-53, 55-57.)

3

Lewis Rice knew that SBU was a structured settlement company. (*Id.* ¶ 26.) It knew that SBU used government securities held under trust agreements to secure and generate payments. (*See id.* ¶ 29.) It also knew that these securities were held in trust for the sole benefit of personal injury victims, including Plaintiff, who had settled law suits. (*Id.* ¶¶ 32, 63.) Lewis Rice was fully aware of these facts when it designed an acquisition plan for Family Company to buy a supermarket chain based primarily on a $22.5 million loan from SBU. (*See id.* ¶¶ 31, 49, 60-64.)

These well-pled allegations of the Third-Party Complaint, together with all reasonable inferences drawn therefrom, support PrivateBank's theory of liability for contribution and overcome any qualified privileged claimed by Lewis Rice. The trust agreement at issue in this case, which was established to fund Plaintiff's structured settlement account, was set up by SBU in October 1993. (*Id.* ¶¶ 17-18.) Pursuant to the trust agreement, SBU transferred U.S. Treasury Stripped Bonds to PrivateBank, as trustee, for the purpose of making periodic payments to Plaintiff. (*Id.* ¶¶ 19, 21.) Lewis Rice knew that SBU's structured settlement trust and related agreements (*i.e.*, assignment and assumption agreement), including Plaintiff's agreements, constituted enforceable contracts and required that the assets thereof be held strictly in trust for the purpose of making periodic payments to personal injury victims. (*Id.* ¶¶ 17-18, 32, 171-72.)

In January 1996, Lewis Rice advised James Gibson that SBU, because it was settlor and sole beneficiary of the structured settlement trust accounts, was entitled to eliminate the trust vehicle altogether, or employ itself or another wholly owned corporation, like Flag, to fulfill the corporate trustee function. (*Id.* ¶ 31.) Thereafter, in August 1996, SBU removed PrivateBank as trustee in favor of Flag, a Gibson/SBU affiliate. (*Id.* ¶¶ 22-23, 28.) Lewis Rice knew of the affiliation between Gibson, SBU and Flag, and served a counsel to all three parties. (*Id.* ¶¶ 25-26.) Furthermore, although Lewis Rice knew the terms of the trust agreements and knew that

4

SBU was obligated to hold settlement trust assets strictly in trust for periodic payments to personal injury plaintiffs, Lewis Rice nevertheless advised or acquiesced in the plan that James Gibson or SBU could use these trust assets to finance the purchase of a chain of supermarkets which were located in St. Louis. (*Id.* ¶¶ 29, 49.)

During the period between late 1995 through 1999, SBU converted bonds (and proceeds therefrom) held in trust and used the same to finance the purchase of the chain of supermarkets and to fund operating losses. (*Id.* ¶¶ 44-45, 47-49.) These supermarkets were owned and operated by Family Company. (*Id.* ¶ 50.) Lewis Rice represented Gibson, SBU, Flag, and Family Company in connection with the purchase of these supermarkets and had a vested financial interest in the consummation of the transaction. (*Id.* ¶ 60-65.)[3] Lewis Rice knew, however, that neither Gibson, SBU, nor Family Company had monies of their own sufficient to fund the acquisition of the supermarkets, and complied in the conversion and use of structured settlement trust assets to fund the acquisition, in violation of the terms of the structured settlement trust and related agreements. (*Id.* ¶¶ 61-64.) Lewis Rice even represented both SBU (as lender) and Family Company (as borrower) in the loan transaction between them. (*Id.* ¶ 62.)

Following the closing of the acquisition transaction, Lewis Rice knew that Family Company was losing money and needed infusions of additional financing to operate the supermarkets. (*Id.* ¶ 66.) Lewis Rice continued to advise James Gibson, or acquiesced in his belief or position, that SBU could use the trust assets to finance the operation of the supermarkets despite knowing that such was contrary to the terms of the structured settlement agreements. (*Id.* ¶¶ 29, 49, 62-63, 66.)

---

[3] Lewis Rice agreed to bill Gibson and Family Company 70% of its hourly rates, pending closing of the transaction, with the remaining 30% due and payable only upon the closing of the transaction. (TPC ¶ 65.)

Lewis Rice's conduct as described above and set forth in the Third-Party Complaint was wholly unjustified. Any legal advice provided by Lewis Rice was knowingly contrary to the trust obligations under the structured settlement trust agreements and related documents and, thus, not in the best interest of its clients. (*See id.* ¶¶ 29, 31-32, 49, 60-64, 66, 172.) Moreover, in light of Lewis Rice's knowledge, any complicity on its part in advising its clients would not be reasonable or justifiable under any circumstances. (*See id.*)[4]

Lewis Rice purposely induced and/or voluntarily participated in conduct that caused SBU to breach its contract with Plaintiff (and countless others) by advising James Gibson or acquiescing in the position that structured settlement trust assets could be used to fund the purchase and operation of the supermarkets. (*Id.* ¶¶ 29, 49, 60-64, 173.)[5] Without justification, Lewis Rice provided this advice despite its knowledge that SBU's structured settlement trust agreements required trust assets to be held strictly in trust for the exclusive purpose of making periodic payments to personal injury victims. (*Id.* ¶¶ 32, 49, 63, 66.) Lewis Rice's conduct further was part of a conspiracy with the other Third-Party Defendants to wrongfully and illegally convert and use the trust assets to fund the acquisition and operation of the supermarkets. (*Id.* ¶¶ 225-27.) Lewis Rice both understood and participated in accomplishing

---

[4] In defense of his criminal charges, James Gibson stated that he acted on the advice of counsel when he used the structured settlement trust assets to finance the acquisition of the chain of supermarkets. (*See* Motion *In Limine* from related criminal proceeding against James Gibson acknowledging potential defense of good faith reliance on advice of counsel (attached hereto as **Exhibit A**).) The Court can take judicial notice of James Gibson's defense of good faith reliance on advice of counsel in his criminal action proceeding before a sister federal district court. *See Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995).

[5] In the alternative, Lewis Rice was aware of a fiduciary relationship between SBU and Plaintiff (and those persons similarly situated to Plaintiff) and, as described above, purposely induced and/or voluntarily participated in conduct that violated SBU's fiduciary duties to Plaintiff and countless others. (TPC ¶¶ 175-79.) Again in the alternative, Lewis Rice was aware that Plaintiff (and those persons similarly situated to Plaintiff) had a reasonable expectation of receiving periodic, structured settlement payments under the terms of the structured settlement trust agreements and, as described above, purposely induced and/or voluntarily participated in conduct that interfered with this expectancy. (*Id.* ¶¶ 180-82.)

6

this objective through its conduct as described above and as alleged in the Third-Party Complaint. (*Id.* ¶¶ 229-31.)

As a result of Lewis Rice's conduct, countless former personal injury plaintiffs, including Plaintiff, no longer receive payments under their structured settlement arrangements (*id.* ¶¶ 67, 174, 179, 183, 232) and James Gibson is spending the next twenty-some years in federal prison pursuant to a plea agreement for one count of mail fraud (Plea Agreement of James Gibson (attached hereto as **Exhibit B**)).[6] Lewis Rice, however, received substantial fees for the consummation of the acquisition transaction. (*See* TPC ¶¶ 65-66.)

## III. STANDARD OF REVIEW

Under federal court pleading rules, a complaint need only provide a plain statement of the cause of action that is sufficient to give the defendant notice of the nature of the claims against it. *See, e.g., Alper v. Altheimer & Gray,* 257 F.3d 680, 687 (7th Cir. 200) (citing FED. R. CIV. P. 8(a).) As the Court is aware, a Rule 12(c) motion for judgment on the pleadings will be granted "only if it appears beyond a doubt that the plaintiff cannot prove any facts that would support a claim for relief." *Centennial Ins. Co. v. Transitall Serv. Inc.,* No. 00 C 1383, 2001 WL 289879, at *1 (N.D.Ill. March 15, 2001) (Guzman, J.); *Essen Nutrition v. Electronic Liquid Fillers, Inc.,* No. 95 C 5486, 1996 WL 535340, at *2 (N.D.Ill. Sept. 19, 1996) (Guzman, J.). To satisfy this heavy burden, the moving party – in this case, Lewis Rice – must establish that "no material issue of fact needs to be resolved, and that the moving party is entitled to judgment as a matter of law." *Essen Nutrition,* 1996 WL 535340, at *2. While examining whether Lewis Rice has satisfied this burden, the Court must "accept as true all facts alleged in the complaint and draw all reasonable inferences from the pleadings in favor of [PrivateBank]." *Id.; Cedeno v.*

---

[6] The Court can take judicial notice of James Gibson's plea agreement and the conditions thereof. *See, e.g., Scholes,* 56 F.3d at 762 (allowing judicial notice of facts recited in a plea agreement pursuant to Fed. R. Evid. 201).

7

*Fieldstone Mortgage Co.,* No. 01 C 5110, 2002 WL 1592759, at *7 (N.D.Ill. July 19, 2002) (Guzman, J.).

## IV.  ARGUMENT

At this early stage of the proceeding, the Court cannot reasonably determine that there is *no* set of facts that would support PrivateBank's claim for contribution against Lewis Rice.  This is particularly true where, as here, Lewis Rice seeks a judgment on the pleadings on the sole basis that the Third-Party Complaint contains insufficient allegations of "actual malice" to overcome its purported conditional privilege to provide legal advice and services to clients.  As courts in this District have recognized, the "actual malice test" concerning an attorney's qualified privilege "requires [the court] to consider the intent and motivation of a party, issues that have been held to be inappropriate [even] for summary judgment when they dominate a claim." *Marc Dev., Inc. v. Wolin,* 904 F.Supp. 777, 784 (N.D.Ill. 1995) (citing *White Motor Co. v. United States,* 83 S.Ct. 696, 700, 372 U.S. 253, 259 (1963)).[7]

### A.  PrivateBank Properly Seeks Contribution From Lewis Rice Because Count IV Adequately States Tort Claims Against Lewis Rice.

In its Motion for Judgment on the Pleadings, Lewis Rice does not contend, nor can it contend, that PrivateBank's Third-Party Complaint fails to allege sufficient facts to state contribution claims against Lewis Rice for tortious interference with contract, tortious inducement to breach fiduciary duty, and/or tortious interference with prospective economic advantage.  (*See* Mem. Supp. Mot. J. Pleadings ("MMJP") at pp. 1-15.)  The Third-Party Complaint provides ample notice to Lewis Rice of these claims which, as the Court has

---

[7] Lewis Rice's arguments regarding "actual malice" are reminiscent of the arguments previously made by Third-Party Defendants Crews and CIBC in support of their respective motions to dismiss PrivateBank's Third-Party Complaint.  In addressing those motions, the Court similarly noted that "actual knowledge" is a "state-of-mind issue . . . that nobody ever has any hard evidence on," and motions to dismiss based on such a "fact-intensive thing" are denied "nine times out of ten." (Transcript of October 17, 2002 Proceedings pp. 23-25 (relevant pages attached hereto as **Exhibit C**).)

previously recognized in other cases, is sufficient to satisfy federal court pleading requirements. *See Equis Corp. v. The Staubach Co.*, No. 99 C 7046, 2000 WL 283982, at *1 (N.D.Ill. March 13, 2000) (Guzman, J.) ("[Plaintiff's] allegations easily put [defendant] on notice of their tortuous interference claim and, therefore, survive this motion to dismiss."); *Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *6 (N.D.Ill. Aug. 9 2000) (Guzman, J.) ("Contrary to defendants' argument, a plaintiff need not allege elaborate factual allegations [to state a claim for tortious interference with contract].").

**B.** **Judgment On The Pleadings Is Not Warranted Because Lewis Rice's Conduct Exhibited "Actual Malice" And Was Not "Privileged."**

Lewis Rice instead seeks a judgment on the pleadings contending that its conduct constitutes the rendering of "legal advice and services to its clients" which "cannot serve as basis for a third party's claim as a matter of law." (MMJP at p. 4.) There is, however, no blanket privilege accorded attorneys when advising or performing services for a client, and no such privilege insulates Lewis Rice from potential liability to Plaintiff (or PrivateBank) in this case. *See Wolin*, 904 F.Supp. at 784-85; *Miller v. St. Charles Condo Assoc.*, 141 Ill.App.3d 834, 838-39, 491 N.E.2d 125, 128 (2nd Dist. 1986). As stated in *Wolin*:

> While an attorney is privileged to advise a client and to take action on a client's behalf, the privilege is lost if the attorney exhibits actual malice toward the plaintiff in advising his client.

*Wolin*, 904 F.Supp. at 784 (internal quotation omitted). Other courts have likewise stated that this qualified privilege may be overcome where a plaintiff alleges that the attorney's interference with a client's contract, for example, was "unjustified or malicious, such as where the [attorney's] conduct is totally unrelated or antagonistic to the [client's] interest." *Storm & Assoc., Ltd. V. Cuculich*, 298 Ill.App.3d 1040, 1052, 700 N.E.2d 202, 210 (1st Dist. 1998). Lewis Rice concedes as much where it acknowledges that the privilege may be overcome "by

9

alleging that the defendant acted without justification *or* with malice." (MMPJ at p. 6 (citing *George A. Fuller Co. v. Chicago College of Osteopathic Med.*, 719 F.2d 1326 (7th Cir. 1983)) emphasis added).)

Lewis Rice reads the Third-Party Complaint far too narrowly for purposes of its motion. PrivateBank need not expressly allege the words "actual malice" or "lack of justification" to overcome Lewis Rice's purported privilege. PrivateBank need only set forth facts from which actual malice or lack of justification may reasonably be inferred. *See, e.g., Miller*, 141 Ill.App.3d at 838, 491 N.E.2d at 128 (citing *Schott v. Glover*, 109 Ill.App.3d 230, 235, 440 N.E.2d 376, 380 (1st Dist. 1982)). PrivateBank need only allege facts which, if true, "establish that [Lewis Rice] induced the breach to further their personal goals or to injure the other party [*i.e.*, Plaintiff] of the contract and acted contrary to the best interest of the [client]." (MMJP at pp. 6, 10.) PrivateBank's Third-Party Complaint more than satisfies this burden, especially at this pleading stage of the third-party claims.

Lewis Rice's conduct, as described herein (*see supra* pp. 3-7) and set forth in the Third-Party Complaint, was inexcusable and unjustified, and was directly contrary to the best interests of its multiple, adversely-situated clients. Any legal advice provided by Lewis Rice was knowingly contrary to the terms of the structured settlement trust agreements and contrary to its clients' legal interests. (*See* TPC ¶¶ 29, 31-32, 49, 60-64, 66, 172.) Lewis Rice purposely induced and voluntarily participated in conduct that caused SBU to breach its contract with Plaintiff, and countless other personal injury victims, by advising or acquiescing in the plan that James Gibson and SBU could use structured settlement trust assets to finance the purchase and operation of the chain of supermarkets. (*Id.* ¶¶ 29, 49, 60-64, 173.)[8] Lewis Rice provided this

_____

[8] Alternatively, Lewis Rice was aware of a fiduciary relationship between SBU and Plaintiff (and those persons similarly situated to Plaintiff) and, as described above, purposely induced, acquiesced in, and/or

10

advice despite its knowledge that SBU's structured settlement trust agreements required trust assets *to be held strictly in trust* for the purpose of making periodic payments to personal injury victims. (*Id.* ¶¶ 32, 49, 63, 66.) As a result of Lewis Rice's conduct, countless former personal injury plaintiffs, including Plaintiff, no longer receive payments under their structured settlement arrangements (*id.* ¶¶ 67, 174, 179, 183, 232), and James Gibson is spending the next twenty-some years in federal prison for mail fraud. Lewis Rice, however, received substantial fees for the consummation of the acquisition transaction that would not have come to fruition but for the conversion and use by its clients of structured settlement trust assets to finance the chain of supermarkets acquisition and operation of the supermarket venture. (*See id.* ¶¶ 65-66.) Clearly, the conduct of Lewis Rice advanced its financial interest without proper or justifiable regard for the interests and legal obligations of its clients, as well as the rights of Plaintiff and countless other victims.

The facts supporting these allegations sufficiently overcome any claim of privilege from liability to Plaintiff for purposes of Lewis Rice's motion. *See Wolin,* 904 F.Supp. at 784-785 (holding that attorney was not protected from tortious interference claim and fact issue as to whether attorney acted with improper motive when he advised bank to set-off borrower's payment against amount owed to participant under separate participation agreement precluded summary judgment on tortious interference claim); *Miller,* 141 Ill.App.3d at 838-39, 491 N.E.2d at 128 (failure of attorney for condominium association to give any basis for his belief that he was entitled to collect legal fees in connection with unsuccessful forcible entry and detainer action from the plaintiff/condominium owner (who prevailed in that action) raised issue of fact

---

voluntarily participated in conduct that violated SBU's fiduciary duties to Plaintiff and countless others. (TPC ¶¶ 175-79.) Again in the alternative, Lewis Rice was aware that Plaintiff (and those persons similarly situated to Plaintiff) had a reasonable expectation of receiving periodic, structured payments under the terms of the structured settlement trust agreements and purposely induced, acquiesced in, and/or voluntarily participated in conduct that interfered with this expectancy and with their clients' duties under the trusts. (*Id.* ¶¶ 180-82.)

11

sufficient to defeat summary judgment as to whether attorney bore any ill will against plaintiff or a desire to annoy or injure by preventing plaintiff from obtaining a no assessment letter and selling her condominium); *Greenwood Mills, Inc. v. Burris*, 130 F.Supp.2d 949, 961-62 (M.D.Ten. 2001) (attorney for ERISA health plan beneficiary was not privileged from liability for actions taken in contradiction to subrogation clause in plan, where attorney knew of plan-provided subrogation right yet counseled beneficiary to lie to the plan, with stated goal of evading plan's subrogation claim and, as a result, dispersed settlement monies to a participant despite the fact that the plan dictated such monies should be bestowed upon the plan itself); *see also Kessenich v. Raynor*, 120 F.Supp.2d 242, 253-54 (E.D.N.Y. 2000) ("While an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly tread upon the legal rights of others."). In short, there is a substantial question of fact—namely, Lewis Rice's intent or state of mind—that cannot (and should not) be resolved at the pleading stage.

None of the cases discussed by Lewis Rice support the entry of a judgment on the pleadings in this case. In *Schott v. Glover*, 109 Ill.App.3d 230, 440 N.E.2d 376 (1st Dist. 1982), not only did the plaintiff fail to allege the existence of a contractual relationship, but the plaintiff failed to plead effectively that the lawyer's actions were unjustified because there was no facts alleged which suggested that the attorney exploited the interests of his client to the detriment of the plaintiff or had any interest that was independent from his client. Similarly, in *George A. Fuller Co. v. Chicago College of Osteopathic Med.*, 719 F.2d 1326 (7th Cir. 1983), the complaint set forth only bald conclusions of "malice" and "conspiratorial interference," and failed to

include any facts which suggested or inferred that the attorney acted contrary to its client's interest or for personal gain.

Importantly, however, unlike the *Schott* and *George A. Fuller Co.* cases—and more like the *Wolin* case--PrivateBank's Third-Party Complaint alleges more than that Lewis Rice merely gave incorrect legal advice. The Third-Party Complaint sets forth in detail Lewis Rice's participation in setting up a transaction which totally disregarded its clients' legal and contractual obligations under the structured settlement trust and related agreements, which resulted in the criminal charges against its client James Gibson, and which caused the loss of millions of dollars to Plaintiff and persons similarly situated. Harm to third persons and a divergence of interests between attorney and client(s) could not be clearer under the circumstances. The allegations of the Third-Party Complaint also show the fact of Lewis Rice's contingent fee arrangement and its own interest in closing the transaction, notwithstanding the clear potential and actual detriment to James Gibson and Plaintiff.

Finally, in *Thrall Car Mfg. Co. v. Linquist*, 145 Ill.App.3d 712, 495 N.E.2d 1132 (1st Dist. 1983), the court determined that the attorney did not fraudulently induce his client's employer to pay the client/employee's medical expenses because, unlike in this case, the employer was legally obligated to pay those expenses pursuant to an employee benefit plan established by the union.

All of the cases discussed by Lewis Rice acknowledge that where, as here, the plaintiff alleges that the attorney's conduct is apart from the interests of his client and intended to injure a third party, the plaintiff sufficiently overcomes any qualified privilege shielding that attorney and states a cause of action for tortious interference or inducement. Contrary to Lewis Rice's assertion that PrivateBank "does not – and cannot – allege facts from which one could infer that

13

Lewis Rice acted with malice," the well-pled allegations of the Third-Party Complaint, together with all reasonable inferences drawn therefrom, support PrivateBank's tort theories of liability for contribution and overcome any qualified privileged claimed by Lewis Rice. On this basis, Lewis Rice's Motion for Judgment on the Pleadings should be denied.[9]

**C.    PrivateBank Properly Seeks Contribution From Lewis Rice Because Count VII Adequately States A Conspiracy Claim Against Lewis Rice.**

As with its tortious interference and inducement claims against Lewis Rice, PrivateBank's Third-Party Complaint adequately states a contribution claim against Lewis Rice for conspiracy in Count VII. Judgment on the pleadings with respect to Count VII must, therefore, be denied. Lewis Rice's argument with respect to this claim begins with a fundamental misunderstanding that a conspiracy claim is subject to the heightened pleading requirements of Fed. R. Civ. P. 9. To the contrary, as the Court has recently recognized:

> The Seventh Circuit has "held time and again . . . there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions . . . listed in Rule 9." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (abrogating cases that stated that conclusory allegations of conspiracy were insufficient to withstand a motion to dismiss). "Hence it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Id.*

*Linson v. Miller*, No. 01 C 8781, 2002 WL 31176050, at *2 (N.D.Ill. Sept. 30, 2002) (Guzman, J.). Rule 9 is simply not triggered with respect to PrivateBank's conspiracy claim, and the Third-Party Complaint provides Lewis Rice with ample notice of the nature of this claim. *See id.* To

---

[9] At a minimum, should the Court determine that inadequate factual allegations are provided in the Third-Party Complaint to support PrivateBank's theories of liability against Lewis Rice, PrivateBank should be granted leave to replead its third-party claims against Lewis Rice because, as supported herein, there are numerous additional facts sufficient to plead "actual malice" and "lack of justification" to overcome the qualified privilege claimed by Lewis Rice. FED. R. CIV. P. 15(a) ("[L]eave shall be freely given when justice so requires."). For example, Lewis Rice represented to the Federal Trade Commission ("FTC") that it should approve the supermarket transaction based, in large part, on SBU's financial ability to deliver on any financial shortfalls of Family Company. Such represented "ability" could only have been based upon use of bonds held in trust under the structured settlement trust arrangements.

14

the extent the cases relied upon by Lewis Rice suggest otherwise, those cases have been abrogated by the Seventh Circuit. *Walker*, 288 F.3d at 1007.

Lewis Rice further claims that it is entitled to judgment on the pleadings because "its alleged acts in furtherance of the conspiracy took place in the course of its representation of its clients and . . . [it] is privileged from liability based on these actions." (MMJP at p. 13.) As discussed above, PrivateBank has adequately pled independent tort claims for contribution against Lewis Rice in Count IV (*see supra* at pp. 8-9) and has set forth sufficient factual allegations to overcome the qualified privilege asserted by Lewis Rice (*see supra* at pp. 9-13).

Even if the Court determines that the Third-Party Complaint does not sufficiently state facts to sustain a tortious interference or inducement claim against Lewis Rice – which it does – PrivateBank can nevertheless seek contribution against Lewis Rice in Count VII for conspiracy. The Third-Party Complaint sufficiently alleges that Lewis Rice was an active participant in the conspiracy. As a co-conspirator, Lewis Rice is liable for the tortious actions of other parties taken in furtherance of the conspiracy. *Securities Exchange Commission v. Kimmes*, 799 F.Supp. 852, 858 (N.D.Ill. 1992) (recognizing that each member of a conspiracy "is liable for the others' acts done in furtherance of the conspiracy.") (citing *PaineWebber, Inc. v. Ras*, 767 F.Supp. 930, 933 (N.D.Ill. 1991)). Aside from the tort claims pled against Lewis Rice, PrivateBank has stated claims against other members of the conspiracy, including Crews, CIBC, Lehnbeuter, and Gibson. Lewis Rice's participation in the wrongful conduct of these co-conspirators, as described above, sufficiently links Lewis Rice to the conspiracy, even if Lewis Rice, itself, did not commit a separate tortious act. Thus, PrivateBank's Third-Party Complaint states a valid claim against Lewis Rice for conspiracy, in addition to claims for tortious interference and inducement and Lewis Rice's Motion must be denied.

15

## V. CONCLUSION

For the reasons set forth above, Lewis Rice's Motion for Judgment on the Pleadings must

be denied.

Dated:  January 27, 2003                    Respectfully submitted,

                                                   PRIVATEBANK & TRUST COMPANY


By:_____
                            One of Its Attorneys

David L. Doyle
James V. Garvey
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
(312) 609-7500
(312) 609-5005 (FAX)

16

# *See Case File for Exhibits*