# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1099 | **DATE** | 2/11/2003 |
| **CASE TITLE** | Sherman Cotton vs. Privatebank and Trust Company, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on __ ____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: this Court grants defendant CIBC's motion to dismiss Count VII of Plaintiff's first amended complaint [73-1] without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 2-18-03 | |
| ✓ | Docketing to mail notices. | | date docketed | 147 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHERMAN COTTON, as Independent Executor of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust, as Amended, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Ronald A. Guzmán |
| PRIVATEBANK AND TRUST COMPANY, an Illinois Corporation and BDO SEIDMAN, LLP, a New York Corporation, and CIBC WORLD MARKETS CORP., a Delaware Corporation, | ) ) ) ) ) ) ) | 01 C 1099 |
| Defendants. | ) | |

DOCKETED

FEB 1 8 2003

## MEMORANDUM OPINION AND ORDER

This diversity action involves the alleged misappropriation and conversion of

U.S. Treasury Stripped Bonds ("the Bonds") from trust accounts created for the purpose

of making periodic payments to Loy E. King, Jr. ("King"), and his estate, pursuant to a

settlement agreement. Plaintiff, Sherman Cotton ("Cotton"), executor of King's estate,

has sued CIBC World Markets Corp. ("CIBC") for negligence in permitting the

misappropriation of the Bonds. CIBC now moves to dismiss Count VII (the sole count

against CIBC) of the first amended complaint pursuant to Fed. R. Civ. P. ("Rule")

12(b)(6). For the reasons set forth below, the motion of CIBC against Cotton is granted.

/47

## FACTS

This suit arises out of a settlement agreement pertaining to a personal injury suit brought by King. (First Am. Compl. ("AC") ¶¶ 7-8.) As part of the settlement agreement, the defendant in the personal injury suit assigned its rights and responsibilities to SBU, a Missouri corporation, and SBU agreed to make periodic payments to King pursuant to the settlement agreement. (*Id.* ¶¶ 11-13.) The defendant transferred a lump sum to SBU to cover the purchase of the Bonds sufficient to make the necessary payments. (*Id.* ¶ 14.) Under the agreement, SBU transferred the Bonds to PrivateBank for the purpose of making periodic payments to King. (*Id.* ¶ 15.)

As part of the settlement agreement, a structured settlement trust was created. (*Id.* ¶ 16.) The trust agreement designated SBU as settlor and sole beneficiary, PrivateBank as the trustee of the structured settlement trust and the paying agent, and Cotton, independent executor of King's estate and trustee of King's living trust, as trust creditor. (*Id.* ¶¶ 18-19.) Under the agreement, PrivateBank had the right to appoint a successor corporate trustee on the condition that the persons entitled to the payments receive prompt notice and confirm the appointment. (*Id.* ¶ 20.)

In August 1996, PrivateBank resigned as trustee of the structured settlement trust and appointed Flag, a Missouri corporation, as successor trustee. (*Id.* ¶ 22.) Following the appointment of Flag as successor trustee, SBU and Flag directed PrivateBank to transfer securities, including the Bonds, to an account entitled "Crews Flag Trustee Account" held by Crews, an Arkansas broker-dealer licensed in Illinois. (*Id.* ¶ 101.) James Gibson ("Gibson") was an officer and the majority shareholder for both SBU and Flag. (*Id.* ¶ 31.) Following the transfer of the securities to Crews and continuing through

1998, Crews transferred some of the Bonds into a non-trustee account at CIBC, a

Delaware corporation licensed in Illinois, at the request of either Flag or SBU, through

one or more of the Gibsons. (*Id.* ¶¶ 108-110.)

Prior to the Fall of 1999, Gibson allegedly converted the Bonds from the

structured settlement trust held by Crews and CIBC for his own use and benefit and left

the country. (*Id.* ¶ 31.) King stopped receiving payments pursuant to the Trust

Agreement in July 2000. (*Id.* ¶ 27.) In April 2000, Cotton first received notification that

PrivateBank had resigned as trustee and paying agent in August 1996. (*Id.* ¶ 32.)


## DISCUSSION

When ruling on a Rule 12(b)(6) motion to dismiss, courts must construe the

complaint in the light most favorable to the plaintiff. *Caldwell v. City of Elwood*, 959

F.2d 670, 671 (7th Cir. 1992). In keeping with this end, the facts pleaded in the

complaint are taken as true. *Harris v. Brock*, 835 F.2d 1190, 1192 (7th Cir. 1987).

Therefore, courts must consider "whether relief is possible under any set of facts that

could be established consistent with the allegations." *Bartholet v. Reishauer A.G.

(Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

CIBC in its motion to dismiss the first amended complaint primarily relies upon

the laws of Illinois, Missouri and New York. There is no need to determine the choice

of law issue, however, because according to CIBC, "the law of all three states is

substantially the same" as to the issues at hand, CIBC's Mot. Dismiss Count VII of Am.

Compl. at 5 n.4, and Cotton apparently does not disagree.

CIBC's motion alleges that Cotton's claim should be dismissed for two reasons. First, the motion contends that several statutes preclude its claim against CIBC. Second, the motion argues that common law also bars its claim against CIBC.

With regard to CIBC's first argument, the motion alleges that the claim is barred at the pleading stage by three statutes: the Uniform Commercial Code (UCC), the Uniform Fiduciary Act (UFA), and the Illinois Fiduciary Transfer of Securities Act (ITSA).[1] *See* 810 ILL. COMP. STAT. 5/8-115; 760 ILL. COMP. STAT. 65/1 *et seq.*; 760 ILL. COMP. STAT. 70/5a. These statutes provide broad protection from liability to a security intermediary or a transferor of assets to a fiduciary, except where the intermediary or transferor has actual knowledge of the fiduciary's misappropriation.

As the UCC states, although security intermediaries are generally "not liable to a person having an adverse claim to the financial asset," they can be held liable if they have "[k]nowledge that the action of the customer is wrongful" and engage in action that "goes beyond the ordinary standards of the business of implementing and recording transactions, and reaches a level of affirmative misconduct in assisting the customer in the commission of a wrong." 810 ILL. COMP. STAT. 5/8-115; *id.*, cmt. 5.

Next, the Uniform Fiduciary Act (UFA), "provides protection where a person deals honestly with another knowing him to be a fiduciary." *County of Macon v. Edgcomb*, 274 Ill. App. 3d 432, 435 (Ill. App. Ct. 1995); *see also Appley v. West*, 832

---

[1] CIBC also argues that the Uniform Trustees' Powers Act ("UTPA") bars plaintiff's claim. In support of its argument, CIBC relies on a Missouri statute, MO. REV. STAT. 456.560. As is the case with other statutes upon which CIBC relies, third persons dealing with trustees are "fully protected" as long as these persons do not have "actual knowledge that the trustee is exceeding his powers or improperly exercising them." *Id.* The cases CIBC cites demonstrate that the statute provides protection insofar as the defendant does not have "actual knowledge" of a breach of fiduciary duties. *See Wetherill v. Bank IV Kan., N.A.*, 145 F.3d 1187, 1194 (10th Cir. 1998) (affirming summary judgment where plaintiff failed to produce evidence that defendant had "actual knowledge" of misappropriations); *Huber v. Magna Bank of Mo.*, 959 S.W.2d 812, 815 (Mo. App. Ct. 1997) (affirming summary judgment because defendant "did not have actual knowledge" that there was breach of fiduciary duties).

F.2d 1021, 1031 (7th Cir. 1987); 760 ILL. COMP. STAT. 65/2. However, the statute does not provide protection when parties "have actual knowledge the conduct constitutes a breach of fiduciary obligation or there is bad faith." *County of Macon*, 274 Ill. App. 3d at 436; *Appley*, 832 F.2d at 1031 (assigning liability when there is "actual knowledge of the fiduciary's misappropriation of the principal's funds or when [a party] ... has knowledge of sufficient facts that its action ... amounts to bad faith"); *Ohio Cas. Ins. Co. v. Bank One*, No. 95 C 6613, 1997 WL 428515, at *3 (N.D. Ill. July 23, 1997) (explaining that "those who deal with a fiduciary are not responsible for his misconduct unless they have actual knowledge that his conduct constitutes a breach of fiduciary obligation or they are guilty of bad faith").

Bad faith arises when the transferor to the fiduciary fails to meet its "duty to inquire." *County of Macon*, 274 Ill. App. 3d at 441. This duty does not arise merely when the party becomes aware "of the existence of the fiduciary relationship." *Id.* Rather, courts have found bad faith when "it was 'commercially' unjustifiable for the payee to disregard and refuse to learn facts readily available .... [or where] obvious circumstances become so cogent that it is 'bad faith' to remain passive." *Appley*, 832 F.2d at 1031 (quoting *Maryland Cas. Co. v. Bank of Charlotte*, 340 F.2d 550, 554 (4th Cir. 1965)). That is, courts may find bad faith when "the taker suspects that the fiduciary is acting improperly and deliberately refrains from investigating in order that he may avoid knowledge that the fiduciary is acting improperly. *County of Macon*, 274 Ill. App. 3d at 435; *see also Ohio Cas. Ins. Co. v. Bank One*, No. 95 C 6613, 1996 WL 507292, at *2 (N.D. Ill. Sept. 5, 1996) (identifying bad faith as a party "suspects that the fiduciary is acting improperly and deliberately refrains from investigating in order ... to avoid

knowledge that the fiduciary is acting improperly"). Hence, the UFA will not protect

transferor parties that know of a breach of a fiduciary duty or exhibited bad faith in

remaining willfully ignorant.

CIBC also alleges that Cotton's claim is barred by a third statute: the Illinois

Fiduciary Transfer of Securities Act ("ITSA"). 760 ILL. COMP. STAT. 70/5a. As is the

case with the other statutes upon which CIBC relies, although third parties who transfer a

security for a fiduciary have no duty to inquire into whether the transaction involves any

breach of fiduciary duty, these third parties are not protected if they act "with actual

knowledge that the proceeds of the transaction were being or were to be used wrongfully

for the individual benefit of the fiduciary or that the transaction was otherwise in breach

of duty." *Id.*

Second, CIBC argues that Cotton's claim is foreclosed by common law. At one

time under Illinois common law, a plaintiff had a cause of action against a party who

"'negligently assisted a fiduciary in misappropriating the principal's funds.'" *Appley v.*

*West*, 832 F.2d 1021, 1030 (7th Cir. 1987) (quoting *Maryland Cas. Co.*, 340 F.2d at 553).

However, though a number of statutes have eliminated the cause of action for mere

negligence, they preserve a cause of action where there is "actual knowledge of a

fiduciary's misappropriation of funds," *Appley*, 832 F.2d at 1031, where there is

sufficient information to make any appropriation without further inquiry amount to bad

faith, and where there is conduct that "goes beyond the ordinary standards of business ...

and reaches a level of affirmative misconduct," 810 ILL. COMP. STAT. 5/8-115, cmt. 5.

CIBC contends that a number of New York cases indicate that common law

precludes Cotton's claim. (CIBC's Mot. to Dismiss Count VII of Am. Compl., § II.) As

6

the cases state, under the common law in New York, securities brokers "do not owe a general duty of care or disclosure to the public simply because they are market professionals." *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 571-72 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998). However, these cases also indicate that a cause of action is preserved under the common law if the defendants possess actual knowledge of the misconduct. *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 248 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918; *see Cumis Ins. Soc. v. E.F. Hutton & Co., Inc.*, 457 F. Supp. 1380, 1387-88 (S.D.N.Y. 1978) (rejecting claim because there was no evidence that the defendant had actual knowledge of misappropriation and refusing to impose a "duty on brokers to monitor ... and investigate all the clients of their customers); *see also Rolf v. Blyth Eastman Dillon & Co., Inc.*, 424 F. Supp. 1021, 1038 (S.D.N.Y. 1977), *aff'd & remanded*, 570 F.2d 38 (2d 1978). In interpreting New York law, a court in this district has also found parties liable for misappropriation where there is "'knowing participation' [, which] occurs when a third party, with actual knowledge of the breach [of fiduciary duty], provides 'substantial assistance' to the employee committing the breach." *E. Trading Co. v. Refco, Inc.*, No. 97 C 6815, 1998 831834, at *10 (N.D. Ill. Nov. 25, 1998) (citing *Kolbeck*, 939 F. Supp. at 246-47).

In judging whether plaintiff's claims are barred by statute or common law, this Court notes that plaintiff, under the heading "COUNT VII Negligence vs. CIBC" alleges that CIBC "knew, or should have known" that the securities it held were to be used "solely for the purpose of making periodic payments to third persons, including King, under structured settlement arrangements." (AC ¶ 109.) In defining the scope and meaning of the terms "knew, or should have known" Cotton explicitly charges CIBC

with "negligence." (*See* AC ¶ 112.) The statutes upon which CIBC relies and the common law allow claims only where the intermediary or transferor has *actual knowledge* of the fiduciary's misappropriation. Because Count VII seeks to hold CIBC liable under the more relaxed negligence standard, which would create liability on the basis that CIBC *should have* known about the fiduciary's misappropriation, Count VII cannot stand.

It might have been reasonable to infer actual knowledge had plaintiff pleaded simply, without more, that CIBC "knew or should have known" about the fiduciary's misappropriation because under the Federal Rules of Civil Procedure, a plaintiff is allowed to plead alternative theories. Even if the "should have known" theory would likely be barred and stricken, the allegation of knowledge would likely survive a motion to dismiss. However, given Cotton's express use of the term "negligence" in the first amended complaint before the Court, Count VII must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court grants CIBC's motion to dismiss Count VII of plaintiff's first amended complaint [doc. no. 73-1] without prejudice.

**SO ORDERED**                    **ENTER:** *2/11/03*

HON. RONALD A. GUZMAN
**United States Judge**

8