Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1099 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Sherman Cotton vs. Privatebank and Trust Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants BDO Seidman's motion for a finding of a good faith settlement between it and Cotton and hereby grants BDO Seidman's motion to dismiss with prejudice the third-party complaint of Crews & Associates [109-1, 109-2] with respect to any claim grounded solely in tort.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | |
| TBK | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERMAN COTTON, as Independent Executor of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust, ) ) ) ) ) Plaintiff, ) ) v. ) ) PRIVATEBANK AND TRUST COMPANY, an Illinois corporation, BDO SEIDMAN, LLP, a New York limited liability partnership, and ) ) ) ) Defendants, ) ) v. ) ) CREWS & ASSOCIATES, an Arkansas Corporation, CIBC WORLD MARKETS CORP., a Delaware corporation, SBU, INC., a Missouri Corporation, FLAG FINANCE CORPORATION, a Missouri corporation, JAMES R. GIBSON, MARJORIE GIBSON and JACQUELYNE GIBSON, ) ) ) ) ) ) ) Third-Party Defendants. ) | Judge Ronald A. Guzmán<br><br>01 C 1099 |
| CREWS & ASSOCIATES, an Arkansas Corporation, ) ) ) Third-Party Defendant/Third-Party Plaintiff, ) ) v. ) ) BDO SEIDMAN, LLP, a New York limited liability partnership, ) ) ) Third-Party Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Sherman Cotton ("Cotton"), executor of the estate of Loy E. King, Jr. ("King"), reached a settlement with the defendant and the third-party defendant BDO Seidman, L.L.P. ("BDO"). BDO asks this Court to find that the settlement was reached in good faith and therefore bars any contribution claims against BDO pursuant to Section 2(c) of the Joint Tortfeasor Contribution Act, 740 ILL. COMP. STAT. 100/2(c) (West 1996). BDO further moves to dismiss the third-party complaint by third-party defendant Crews & Associates, Inc. ("Crews"). For reasons provided in this Memorandum Opinion and Order, the Court finds that the settlement in which Cotton dismisses BDO from the current case is a good faith settlement. Consequently, the Court dismisses Crews' third-party complaint against BDO with prejudice for contribution with regard to any claim based solely in tort.

# FACTS

This suit involves the alleged misappropriation and conversion of U.S. Treasury Stripped Bonds from structured settlement trust accounts created to make periodic payments to King and his estate. On Feb.16, 2001, Cotton filed a complaint in the United States District Court for the Northern District of Illinois Eastern Division against PrivateBank and Trust Company ("PrivateBank"), a former trustee of King's trust. PrivateBank filed complaints against Crews, James Gibson ("Gibson"), and other third-party defendants. On June 18, 2002, Cotton amended his complaint to sue BDO, the accounting firm for Gibson and his corporate entities, for negligence and breach of fiduciary duty. Under each of the seven counts alleged in the amended complaint, Cotton requested a judgment in an unspecified amount over $75,000.00, punitive damages, litigation costs, and any other just and equitable relief. On July 30, 2002, Crews filed

a third party complaint against BDO for contribution under the Joint Tortfeasor Contribution Act.

Meanwhile, Cotton and BDO reached a settlement. On July 23, 2002, Cotton executed a "General Release" ("Release") and a "Stipulation to Dismiss" ("Dismissal") in exchange for a payment by the government in the amount of $689,224.86. BDO then filed a motion for good faith finding of the settlement and to dismiss Crews' third-party complaint.

Both parties have adequately briefed the Court on the issue of the good faith nature of the settlement and have presented the following relevant facts. Before Cotton entered into the settlement with BDO, he received a letter from the Chief U.S. Probation Officer for the Southern District of Illinois ("Letter"), dated on June 19, 2002. (Crews Opp'n BDO's Mot. Good Faith Finding & Dismiss Third Party Compl., Ex. E., Letter from U.S. Probation Office to Estate of Loy King of 6/9/02.) The Letter explained that a sixteen million dollar ($16,000,000) government restitution fund ("Fund") was established for the fraud victims,[1] pursuant to a pretrial diversion agreement between BDO and the government reached in a criminal litigation against BDO in the U.S. District Court for the Southern District of Illinois. (Id. at 1.) BDO financed the Fund. (Id.) The Department of Justice determined that Cotton's pro rata share of the Fund was $689,224.86. (Id., Attach. A.) To receive the payment, Cotton was required to waive any rights to "pursue civil litigation" and dismiss any filed litigations against BDO for any of BDO's activities in relation to Gibson or Gibson-related companies. (Id. at 3, Attach. C, General Release.) When BDO Seidman received a stipulation to dismiss a civil complaint by a

---

[1] In order to apportion the restitution fund, the government estimated that $3,456,670.95 would have been needed to fund an annuity which would provide the past payments not paid and the future payments originally scheduled for Cotton. (Id., Attach. A.) Cotton was required to indicate whether he agreed or disagreed with this calculation. (Id. at 2.)

victim, BDO Seidman would notify the criminal court that the victim had qualified for his or her portion of the Fund. (*Id.* ¶ 1.) A general release form and a stipulation for dismissal form were attached. (*Id.*) Cotton's attorney Keith Staubus was involved in all communications between Cotton and the government. After Cotton reviewed the letter, he executed the Release and the Dismissal. On Oct. 19, 2002, Cotton received $700,026.97 from the United States Probation Office.

## DISCUSSION

When a trial court is notified that a settlement has been reached and is asked to determine the good faith nature of the settlement, the court "should rule on the good faith of the settlement as soon as practicable, apart from and in advance of any trial on the tort issues." *Johnson v. United Airlines*, 784 N.E.2d 812, 818 (Ill. 2003) (citing *Barreto v. City of Waukegan*, 478 N.E.2d 581, 588 (Ill. App. Ct. 1985)). Upon finding that the settlement was reached in good faith, the trial court should dismiss any claims for contribution against the settling defendant. *Banovz v. Rantanen*, 649 N.E.2d 977, 984 (Ill. App. Ct. 1995).

Therefore, the Court will first determine whether Cotton and BDO settled in good faith before ruling on BDO's motion to dismiss Crews' third-party complaint. Reviewing the facts presented by the parties, the Court finds that BDO and Cotton have reached a good faith settlement, which extinguished Crews' right to contribution against BDO pursuant to Section 2(d) of the Joint Tortfeasor Contribution Act. 740 ILL. COMP. STAT. 100/2(d). BDO's motion to dismiss Crews' third-party complaint against BDO is granted.

The Joint Tortfeasor Contribution Act creates a statutory right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person

4

or property, or the same wrongful death," 740 ILL. COMP. STAT. 100/1, 2(a), to the extent that a tortfeasor pays more than his pro rata share of the common liability. 740 ILL. COMP. STAT. 100/2(b). No contribution may be obtained by or from a tortfeasor with whom the injured party has settled in good faith. 740 ILL. COMP. STAT. 100/2(d). The good faith of a settlement is the only limitation placed on the right to settle. *Dubina v. Mesirow Realty Dev., Inc.*, 756 N.E.2d 836, 840 (Ill. 2001); *In re Guardianship of Babb*, 642 N.E.2d 1195, 1199 (Ill. 1994).

The Joint Tortfeasor Contribution Act does not define the term "good faith." To evaluate whether a settlement between an alleged joint tortfeasor and the plaintiff was made in good faith for purposes of the Joint Tortfeasor Contribution Act, the judge should make a case by case decision based on his or her personal experience. *Wasmund v. Metro. Sanitary Dist. of Greater Chicago*, 482 N.E.2d 351, 354 (Ill. App. Ct. 1985), *abrogated on other grounds by Johnson*, 784 N.E.2d 812. The trial court must consider the totality of the circumstances surrounding the settlement and seek to balance the two important underlying public policies of the Joint Tortfeasor Contribution Act: 1) the promotion of peaceful settlements and 2) equitable apportionment of the damages. *Dubina*, 756 N.E.2d at 840-41; *Babb*, 642 N.E.2d at 1203; *Johnson*, 784 N.E.2d at 821. "[T]he settling parties carry the initial burden of making a preliminary showing of good faith." *Id.* at 820. Then the party challenging the good faith of the settlement must prove the absence of good faith by a preponderance of the evidence. *Id.*

Reviewing the totality of the circumstances surrounding the settlement, the Court finds that Cotton and BDO have settled in good faith. BDO has satisfied its burden of making an initial showing of a good faith settlement. Further, Crews has failed to establish that it is more likely than not that good faith is absent.

The Court does not need to hold additional hearings to determine the good faith nature of

5

the settlement. Illinois courts consistently hold that it is unnecessary for a trial court to conduct separate evidentiary hearings, decide the merits of the tort case, or rule on the relative liabilities of the parties before making a good faith determination. *See Johnson*, 784 N.E.2d at 824 (citing *Smith v. Texaco, Inc.*, 597 N.E.2d 750, 755 (Ill. App. Ct. 1992); *Ruffino v. Hinze*, 537 N.E.2d 871, 874 (Ill. App. Ct. 1989); *Barreto*, 478 N.E.2d at 588). A trial court is capable of ruling on "good faith" without a precise determination of the overall damages suffered by the plaintiff. *Id.* at 139. In the current case, both Crews and BDO submitted extensive memoranda, affidavits, and other materials in support of their positions. There are no material factual disputes. The facts presented are sufficient for the Court to make a good faith determination.

BDO has satisfied its burden of proof by making a preliminary showing of good faith. To do so, BDO must "show the existence of a legally valid settlement agreement." *Johnson*, 784 N.E.2d at 820. A settlement agreement is a contract. *Air Line Stewards & Stewardesses Assoc., Local 550 v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983). Thus it must have three components: (1) offer, (2) acceptance, and 3) consideration. *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977). In some cases, settlements with consideration exchanged were held to be *prima facie* valid and therefore were presumed to be in good faith. *Johnson*, 784 N.E.2d. at 819 (citing *Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 448-49 (Ill. App. Ct. 2000); *Solimini v. Thomas*, 688 N.E.2d 356, 361 (Ill. App. Ct. 1997); *McDermott v. Metro. Sanitary Dist.*, 607 N.E.2d 1271, 1297 (Ill. App. Ct. 1992)). However, not all legally valid settlements satisfy the "good faith" requirements of the Joint Tortfeasor Contribution Act. *Johnson*, 784 N.E.2d at 820 (citing *Stickler v. Am. Augers, Inc.*, 757 N.E.2d 573, 577-78 (Ill. App. Ct. 2001); *Stickler v. Am. Augers, Inc.*, 708 N.E.2d 403, 406 (Ill. App. Ct. 1999); *Bower v. Murphy & Miller, Inc.*, 650 N.E. 2d 608, 611 (Ill. App. Ct. 1995)) Therefore, "other factual evidence may

6

be necessary before the court may determine, as an initial matter, whether the settlement is fair and reasonable in light of the policies underlying the Contribution Act." *Id.*

The Court finds that Cotton and BDO settled in good faith. The mere fact that the government has paid the consideration on behalf of BDO Seidman does not change this conclusion. Consideration "may be paid by the promisee or some other person and given to the promisor or to some other person." Restatement (Second) of Contracts § 71 (4) (West 1981). In *Brown v. Torin Corp.*, 529 N.E.2d 1077 (Ill. App. Ct. 1988), the court held that a settlement in which the injured employee released the employer and the former owner of machinery of liability was made in good faith. There, the employer paid the former owner and the former owner directly paid the injured employee. *Id.* at 1078-79. In return, the employee released both the employer and the former owner. *Id.* The court found that the settlement was legally valid as an agreement between the former owner and the employee, with the employer as a third-party beneficiary. *Id.* at 1080. Similarly, in the current case, Cotton has agreed to receive his portion of the $16 million restitution fund held in U.S. District Court for the Southern District of Illinois from the government. BDO Seidman is technically a third-party beneficiary of that agreement. The fact that the government is not a party in the current case does not change the Court's analysis of the settlement.

BDO has established that the agreement between Cotton and the government to release BDO of all the liabilities in the current case is legally valid by presenting evidence of a payment made by the government in the amount of $689,224.86 as consideration. As specified in the June 19, 2002 Letter, the government promised to pay Cotton in the amount of $689,224.86, which it received from BDO Seidman, in exchange for Cotton's withdrawal of any existing complaints and promise not to file any future complaint(s) against BDO. Cotton signed the

7

relevant forms and accepted the offer on July 23, 2002. As part of his consideration, Cotton agreed to withdraw all existing claims, including the two claims against BDO in the current case filed on June 18, 2002. The fact that under the agreement, Cotton would not be able to opt into the restitution fund without BDO's notification to the government that Cotton had signed the release shows, at the very least, that BDO still controlled whether Cotton received his portion of the Fund. Government then paid Cotton in the amount of $700,026.97. It is clear to the Court that the settlement agreement is, at minimum, legally valid and enforceable.

Furthermore, other evidence also indicates that the settlement in the instant case was made in good faith because it is fair and reasonable in light of the underlying policies of the Joint Tortfeasor Contribution Act. In *Johnson v. United Airlines*, the Illinois Supreme Court upheld the trial court's finding of *prima facie* good faith when there were considerations exchanged and the evidence indicated that both parties rationally made informed decisions to enter the agreement. 784 N.E.2d at 822. Similarly, the current settlement agreement is a *prima facie* good faith settlement because the evidence indicates that it is reached voluntarily and with mutual assent. When Cotton, as executor of the Estate of Loy King Jr., entered into the settlement to dismiss BDO from the current case, Cotton had an understanding of the relative culpability of BDO and the likelihood of recovery. Cotton was well informed and had weeks to make a decision under the advisement of his attorney. It appears that Cotton did so after considering the payment promised by the government, the possible litigation results, and the cost and time associated with instant litigation.

After BDO satisfies its burden of proof to make a preliminary showing of good faith, the burden shifts to Crews to show that the settlement was reached in bad faith by a preponderance of the evidence. Crews has failed to provide any evidence of bad faith. A settlement is not in

good faith if it is shown that the settling parties engaged in collusion, fraud, unfair dealing, or wrongful conduct by the settling parties. *Dubina*, 756 N.E.2d at 840; *Babb*, 642 N.E.2d at 1199; *Lowe v. Norfolk & Western Ry. Co.*, 463 N.E.2d 792, 804 (Ill. App. Ct. 1984). Nor will a settlement agreement satisfy the good-faith requirement if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Joint Tortfeasor Contribution Act. *Dubina*, 756 N.E.2d at 840; *Babb*, 642 N.E.2d at 1204; *Johnson*, 784 N.E.2d at 821.

In *Dubina v. Mesirow Realty Dev., Inc.*, the Supreme Court of Illinois held that the settlement agreement was not made in good faith when the plaintiffs assigned their claims against non-settling tortfeasors to settling tortfeasors. 756 N.E.2d. at 842-43. The court reasoned that the assignment was contrary to the terms of the Joint Tortfeasor Contribution Act which prohibited the settling defendants from seeking contribution from non-settling tortfeasors. *Id.* The court also found that the settlement did not advance the Joint Tortfeasor Contribution Act's underlying policies to promote peaceful settlements and equitable apportionment of the damages. *Id.* Similarly, in *In re Guardianship of Babb*, the Supreme Court of Illinois held that a settlement containing a loan-receipt provision was not made in good faith. 642 N.E.2d at 1204-05. The court found that the settlement conflicted with the terms of the Joint Tortfeasor Contribution Act by allowing a settling tortfeasor to accomplish indirectly what is expressly forbidden by the Joint Tortfeasor Contribution Act. *Id.* The court also found that recognizing the settlement as a good faith settlement would not promote peaceful settlements or equitable apportionment of the damages. *Id.*

In contrast to the above cases, there is no evidence in this case that would lead the Court to find that the settlement contravenes the policies underlying the Joint Tortfeasor Contribution Act. Crews has not provided any relevant evidence of collusion, fraud, unfair dealing, or

9

wrongful conduct to show that Cotton and BDO settled in bad faith.

Crews first argues that the Fund was established as a result of the pretrial diversion agreement between BDO and the government in the context of a criminal litigation and, therefore, can not be used for the purpose of a civil litigation settlement. (Crews Opp'n at 8-13.) However, Crews fails to identify the real issue in the case. To borrow Crews' own words, it is mixing apples and oranges. As discussed above, there are at least two separate agreements: (1) the pretrial diversion agreement between the government and BDO in the criminal litigation, which created the Fund, and (2) the settlement agreement in which Cotton released BDO of all the liabilities in the current case. The second agreement is at issue before the Court. Crews' contribution claim against BDO with regard to claims based solely in tort in this case will be dismissed as long as the second agreement was made in good faith. The pretrial diversion agreement simply provided the funding for the second agreement. Therefore, the Court finds that the source of the funding does not negate the good faith nature of the second agreement.

Crews also argues that Cotton never participated in negotiations between the government and BDO concerning the amount or terms of the Fund. (*Id.* at 15-17.) Whether Cotton was involved in the negotiations between BDO and the government to reach the pretrial diversion agreement has no bearing on the good faith nature of the settlement in the current case. The real question is whether Cotton voluntarily assented to the current settlement agreement. The evidence indicates that Cotton did. Cotton was well informed of the options available to him. He could opt out of the Fund and pursue civil litigation against BDO Seidman or opt into the Fund and forgo such civil litigation. Cotton had an understanding of the underlying facts of the case, the relative liability of BDO as compared to the other alleged joint tortfeasors, the inherent uncertainty of litigation, and the legal costs. Crews has presented no evidence of wrongful

conduct or fraud that prevented Cotton from making a voluntary and reasonable decision in the best interest of King's estate.

Crews further argues that granting BDO's motion would subvert the underlying policies of the Joint Tortfeasor Contribution Act. (*Id.* at 13-14.) The Court disagrees. There is no indication that recognizing the good faith nature of the settlement agreement between Cotton and BDO will discourage either of the two underlying policies of the Joint Tortfeasor Contribution Act: (1) peaceful settlements and (2) equitable apportionment of the damages.

First, recognizing the agreement as being made in good faith encourages settlements. "[N]othing is better calculated to frustrate and discourage settlements than the knowledge that the settlement lacks finality and will lead to further litigation and perhaps, to further liability." *Perez v. Espinoza*, 484 N.E.2d 1232, 1235 (Ill. App. Ct. 1985). The settlement in the current case enables both Cotton and BDO to best use their resources according to their own judgment.

Second, Crews has not persuaded the Court that recognizing the agreement as being made in good faith will jeopardize the equitable apportionment of damages and allow BDO to escape without bearing an equitable share of the burden of compensating Cotton. (Crews Opp'n at 15.) Illinois courts have repeatedly rejected the "proportionality" or "reasonable range" test for determining the good faith of a settlement. *McDermott*, 607 N.E.2d at 1298. The mere fact that an injured party's actual damages exceed the amount of the settlement does not prove that the settlement was made in bad faith. *Pritchard v. Swedish Am. Hosp.*, 557 N.E.2d 988, 993 (Ill. App. Ct. 1990). The good faith clause should not invalidate a settlement within a reasonable range of the settling party's fair share because the outcome of litigation is speculative for many different reasons and therefore. *Wasmund*, 482 N.E.2d at 354.

Crews has failed to establish that the settlement was made in bad faith by a

11

preponderance of the evidence. Crews provided no evidence of collusion or wrongdoing to indicate a bad faith. Crews first points out that the settlement amount is disproportionate to the damage sustained by Cotton. In *Pritchard v. Swedish American Hospital*, the court held that a doctor's settlement contribution of $10,000 in a medical malpractice suit was reasonable even if the plaintiff sought several millions of dollars in damages because plaintiff might not be able to prove proximate cause. 557 N.E.2d at 993. Similarly, the difference between Cotton's damages and the settlement payment is not sufficient evidence to establish the absence of good faith. Moreover, the amount Cotton received is reasonable in light of the underlying case. As calculated by the government, Cotton suffered a total damage of roughly 3.5 million dollars. Crews did not provide any evidence that Cotton disagreed with this estimation. Cotton in his second amended complaint alleges seventeen claims against the six remaining defendants. Receiving $700,026.97 as consideration to dismiss the claims against yet another defendant does not seem unreasonable considering the inherent risk regarding the unknown outcome of the litigation and the concomitant cost of such complex litigation. Crews next presents Cotton's declaration to support Crews' opposition to BDO's motion, in which Cotton claimed that he "opted into the restitution fund, to ensure that the estate of Loy E. King would receive its share of those funds." (Cotton Decl. Suppl. Crews Opp'n, 2) This is also clearly insufficient to negate the presumption that Cotton voluntarily made the decision to forgo the instant civil litigation against BDO Seidman in good faith in the best interests of King's estate.

In sum, the Court finds that Cotton and BDO have reached a good faith settlement in this case. BDO has satisfied its burden of making a preliminary showing of good faith and Crews has failed to establish the absence of good faith by a preponderance of evidence. The Joint Tortfeasor Contribution Act provides that if a settlement agreement is reached in good faith, all

rights of contribution between the settling defendant and any other tortfeasor not a party to the settlement are extinguished. 740 ILL. COMP. STAT. 100/2; *Johnson*, 784 N.E.2d at 818. Accordingly, Crews' third-party complaint against BDO for contribution, with respect to claims grounded solely in tort, is dismissed with prejudice.

## CONCLUSION

For the forgoing reasons, the Court grants BDO Seidman's motion for a finding of a good faith settlement between it and Cotton and hereby grants BDO Seidman's motion to dismiss with prejudice the third-party complaint of Crews & Associates [doc. nos. 109-1, 109-2] with respect to any claim grounded solely in tort.

SO ORDERED

ENTERED: 9/23/03

HON. RONALD A. GUZMAN
**United States Judge**

13