Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1099 | **DATE** | 3/10/2004 |
| **CASE TITLE** | SHERMAN COTTON vs. PRIVATE BANK & TRUST CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Defendant Lewis, Rice, Fingersh, L.C.'s motion to dismiss. [169-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 3/12/04 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERMAN COTTON, as Independent Executor of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust,<br><br>Plaintiff,<br><br>v.<br><br>PRIVATE BANK & TRUST CO., an Illinois corporation, BDO SEIDMAN, LLP, a New York limited liability partnership,<br><br>Defendants,<br><br>v.<br><br>LEWIS, RICE, FINGERSH, L.C., CREWS & ASSOCS., an Arkansas Corporation, CIBC WORLD MARKETS CORP., a Delaware corporation, SBU, INC., a Missouri corporation, FLAG FINANCE CORP., a Missouri corporation, JAMES R. GIBSON, MARJORIE GIBSON and JACQUELYNE GIBSON,<br><br>Third Party Defendants/<br>Third Party Plaintiffs,<br><br>v.<br><br>BDO SEIDMAN, LLP, a New York limited liability partnership,<br><br>Third Party Defendant. | Judge Ronald A. Guzmán,<br><br>01 C 1099 |

## MEMORANDUM OPINION AND ORDER

This diversity action involves the alleged misappropriation and conversion of U.S. Treasury Stripped Bonds ("the Bonds") from trust accounts created for the purpose of making

periodic payments to Loy. E. King, Jr. ("King") and his estate pursuant to a settlement agreement. Plaintiff Sherman Cotton ("Cotton") has sued Lewis, Rice, Fingersh, L.C. ("Lewis Rice") for tortious interference with contract (Count IV), tortious interference with economic expectancy (Count V), inducement of breach of fiduciary duty (Count VI), conversion of assets (Count VII), and conspiracy to breach fiduciary duty (Count XVII). Defendant has moved to dismiss all five Counts of Plaintiff's second amended complaint currently pending against Lewis Rice pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). For the reasons set forth below, the Court denies Lewis Rice's motion.

## FACTS

This case arises out of a settlement agreement pertaining to a personal injury suit brought by King. As a part of the settlement agreement, the defendant in the personal injury suit assigned its rights and responsibilities to SBU, Inc. ("SBU"), a Missouri corporation, who agreed to make the requisite periodic payments to King and King's estate by way of a trust account consisting of U.S. Treasury Stripped Bonds ("Bonds"). SBU subsequently transferred the Bonds to Private Bank and Trust Company ("PrivateBank"), who created a structured settlement trust to distribute periodic payments to King.

This trust designed SBU as the settlor and sole beneficiary, PrivateBank as the trustee, and Cotton as the trust creditor. PrivateBank, as trustee, then resigned as trustee and appointed Flag Finance Corporation ("Flag") as successor trustee. Subsequently, Flag and SBU, of both James R. Gibson ("Gibson") was officer and majority shareholder, directed PrivateBank to transfer securities including the Bonds to an account held by Crews & Associates, a broker-dealer, who then - at the request of either Flag or SBU or one or more of the Gibsons -

2

transferred some of the Bonds to a non-trustee account at CIBC World Markets Corp. ("CIBC").

Plaintiff alleges that prior to the Fall of 1999, Gibson converted the Bonds from the structured settlement trust held by Crews and CIBC for his own use and benefit and left the country. King stopped receiving payments pursuant to the Trust Agreements in July 2000. On April 4, 2000, Cotton allegedly received notification that PrivateBank had previously in August 1996 resigned as trustee and paying agent.

This suit commenced on February 16, 2001, when Plaintiff filed suit in the U.S. District Court for the Northern District of Illinois against PrivateBank for damages, costs and equitable relief related to the alleged misappropriation and conversion of the Bonds from the structured trust account detailed above. Private Bank then filed complaints against BDO Seidman, L.L.P. ("BDO"), Crews, CIBC, SBU, Flag, and Gibson. Cotton then amended his complaint to include BDO as a Defendant, a claim that has now been settled. *See Cotton v. PrivateBank & Trust Co.*, No. 01 C 1099, 2003 WL 22220259, at *7 (N.D. Ill. Sept. 24, 2003).

On July 7, 2003, Plaintiff was granted leave to amend the complaint to also add Lewis Rice ("Defendant") as a Defendant, alleging five counts: tortious interference with contract (Count IV), tortious interference with economic expectancy (Count V), inducement of breach of fiduciary duty (Count VI), conversion of assets (Count VII), and conspiracy to breach fiduciary duty (Count XVII). Plaintiff alleges that Lewis Rice, as attorney for Gibson, SBU, and King, was aware at the time of its relationship with those parties that there existed a valid and enforceable contract which obligated them to make periodic payments to King under the Trust Agreement; that nevertheless Lewis Rice advised and assisted Gibson and SBU to misappropriate and convert the trust assets to purchase twenty-three grocery stores, knowing that the transaction would deprive the Trust of its source of monies; and that Lewis Rice acted with

3

actual malice and was motivated throughout this transaction by a 30% fee contingent upon the closing of the deal to purchase said stores. (Compl. ¶¶ 103-07.)

Defendant has filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff's claims are time-barred under 735 ILL. COMP. STAT. 5/13-214.3, as well as that Plaintiff's third-party, non-client causes of action are barred by Lewis Rice's qualified privilege against liability under Illinois law.

## DISCUSSION

### A. Statute of Limitations

This Court sitting in diversity will apply the procedural and substantive law of the forum state, including its statute of limitations. *See Reinke v. Boden*, 45 F.3d 166, 172 (7th Cir. 1995) (holding that "it is clear that, as a general rule, Illinois considers statute of limitations matters to be procedural" and thus binding on federal courts in diversity suits).

The general civil Illinois statute of limitations provides:

> Except as provided in Section 2-725 of the "Uniform Commercial Code" . . . and Section 11-13 of "The Illinois Public Aid Code" . . . actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and *all civil actions not otherwise provided for*, shall be commenced within 5 years next after the cause of action accrued.

735 ILL. COMP. STAT. 5/13-205 (emphasis added).

Defendant Lewis Rice, however, argues that Plaintiff's claims of tortious interference, interference with economic expectancy, inducement to breach fiduciary duty, conversion of assets and conspiracy to breach fiduciary duty are time-barred under Illinois' statute of limitations for attorney malpractice actions. That statute reads:

4

> An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

*Id.* 5/13-214.3(b). Plaintiff responds that 735 ILL. COMP. STAT. 5/13-214.3(b) applies only within the context of traditional attorney malpractice and does not bar claims that allege attorney wrongdoing outside of the attorney-client fiduciary relationship.

The Illinois Supreme Court has only once addressed the scope of 735 ILL. COMP. STAT. 5/13-214.3. *See Petersen v. Wallach*, 764 N.E.2d 19, 22-24 (Ill. 2002). In the course of holding that the language of Section 13-214.3 is not limited to actions involving distribution of assets through probate proceedings, that court explained, "[t]he fundamental principle of statutory construction is to determine and give effect to the intent of the legislature." *Id.* at 22. The Court is not "at liberty to depart from the plain language and meaning of the statute . . . ," even if "absurd or unjust result[s]" stem from that interpretation. *Id.* The court noted that had the legislature [LEGISLATURE] intended to limit the statute's language according to the manner of asset distribution, it [they] "could have expressly limited the Act to probate distributions or by expressly excluding nonprobate distributions." *Id.* at 23.

Here, however, the language of 735 ILL. COMP. STAT. 5/13-214.3(b) is unambiguous with respect to its exclusive application to attorney malpractice claims. Defendant argues that 735 ILL. COMP. STAT. 5/13-214.3(b) clearly applies outside of the context of attorney malpractice claims, given that it contains neither a reference to malpractice claims nor to clients. But unlike the portion of Section 13-214.3 that the Illinois Supreme Court in *Peterson* deemed ambiguous and broad, Section 5/13-214.3(b) provides explicitly for a limited reach. The statute provides for

5

a two-year statute of limitations not merely for "an act or omission of the attorney" - the basis of Plaintiff's allegations here - but rather for "an act or omission *in the performance of professional services.*" An attorney who provides professional services assumes a fiduciary duty to the person contracting for her services. *Cf. Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978) (citing *Udall v. Littell*, 366 F.2d 668, 675-76 (1966)). In this context, Lewis Rice assumed no such fiduciary duty as to Cotton, and thus was not engaged in providing "professional services" as to Cotton at the time of the injury.[1]

Defendant cites two cases for the proposition that Illinois case law supports the application of Section 5/13-214.3(b) to non-legal malpractice claims, both of which are insufficient to persuade the Court to alter the plain meaning of the statute's language. *See Salon Group, Inc. v. Salberg*, No. 00 C 1754, 2002 U.S. Dist. LEXIS 5494, at *6-10 (N.D. Ill. Mar. 29, 2002); *Sinclair v. Bloom*, No. 94 C 4465, 1995 WL 348127, at *4 (N.D. Ill. June 8, 1995). Defendant argues that the causes of actions in both *Salon Group* and *Sinclair*, *i.e.*, breach of a license agreement, common law fraud, breach of fiduciary duty and undue influence, fall outside of the normal gambit of attorney malpractice claims, warranting a broad interpretation of Section 13-214.3(b)'s language.

However, the facts of both *Salon Group* and *Sinclair* are strikingly dissimilar from this case in one critical way: both involve a lawyer-client relationship between the Plaintiff and Defendant. The apparent dispute that Defendant references over who *hired* the lawyer in *Salon Group* is conceptually and legally distinct from the issue of whether "professional services" were

---

[1] This interpretation is also supported by the legislative history of Section 13-214.3, although there is no need to look that far. *See Mich. Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 535 (Ill. 2000) ("[W]here the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction.").

6

rendered. *See* 2002 U.S. Dist. LEXIS, at *4 (noting that attorney did "advise[]" both plaintiff and party that allegedly hired attorney in course of professional relationship). That the *Salon Group* court later stated Section 13-214.3 encompassed "any" action in contract, tort, or otherwise, *id.* at *6, does not change the fact that the statute does not use that language nor does it change the fact that it specifies there must exist a "professional" relationship between a defendant and a plaintiff.

Additionally, Judge Coar's holding in *Sinclair v. Bloom* supports the necessity of a lawyer-client relationship between a plaintiff and a defendant in the context of Section 13-214.3. 1995 WL 348127, at *4. There the court noted that whether a cause of action is categorized as "undue influence" or as "breach of fiduciary duty" is irrelevant; the statute of limitations question is answered by reference to whether the attorney's misconduct arose from his performance of professional services. *Id.* (holding that 735 ILL. COMP. STAT. 5/13-214.3 governed because "Bloom 'was acting as an attorney for' plaintiffs" at time of misconduct).

Moreover, Illinois appellate courts have distinguished between a claim arising out of a professional relationship and one arising out of a third-party, non-client relationship. Plaintiff's claims here are similar to *Ganci v. Blauvelt*, where the Illinois Appellate Court held that Section 13-214.3 was inapplicable because the complaint did not allege a failure in professional duty, but rather an action similar to conspiracy or inducement. 690 N.E.2d 649, 653 (Ill. App. Ct. 1998) (holding that 735 ILL. COMP. STAT. 5/13-214.3 only applies where complaint "set[s] forth a failure of . . . professional duty," and not where attorney merely "share[s] culpability for the injuries to plaintiffs").

Thus, this Court holds that plaintiff's claims are not governed by the two-year statute of limitations as Defendant argues. The parties here are bound by the five-year statute of

limitations imposed by 735 ILL. COMP. STAT. 5/13- 205.[2] *See Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 728 N.E.2d 547, 559 (Ill. App. Ct. 2000) (holding that actions for tortious interference with contract are governed by Illinois' five-year statute of limitations).

The Court now must determine whether this cause of action was timely filed. "[W]here a tort involves continuing or repeated injurious behavior, 'the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease.'" *Pavlik v. Kornhaber*, 761 N.E.2d 175, 186-87 (Ill. App. Ct. 2001) (quoting *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 574 N.E.2d 129, 132 (Ill. App. Ct. 1991). "Pursuant to the discovery rule, commencement of the pertinent limitations period may be delayed until such time as the plaintiff knew or should have known that he was wrongfully injured." *Horbach v. Kaczmarek*, 288 F.3d 969, 973 (7th Cir. 2002).

Plaintiffs were granted leave to amend their complaint to name Lewis Rice as a Defendant on July 7, 2003. Plaintiff's complaint and Defendant's motion, memorandum of law, and reply indicate that Plaintiff was made aware of his injury at the earliest in the Fall of 1999 (the date on which Plaintiff discovered that SBU, Gibson, and Flag did not have sufficient funds to cover agreed-upon payments under the structured settlement), and at the latest on April 4, 2000 (the date on which Plaintiff discovered that Flag had replaced PrivateBank as trustee of settlement fund). (Compl. ¶¶ 66, 67.). Thus, reading the complaint in the light most favorable to the moving party, Plaintiff filed suit against Lewis Rice less than four years after discovering their injury, well within time limits imposed by 735 ILL. COMP. STAT. 5/13-205. Accordingly,

---

[2] The inapplicability of 735 ILL. COMP. STAT. 5/13-214.3(b)'s two-year statute of limitations also disposes of the question of the applicability of 735 ILL. COMP. STAT. 5/13-214.3(c)'s six-year statute of repose, the latter which is dependent on the former. 735 ILL. COMP. STAT. 5/13-214.3(c) (holding that "[a]n action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred").

8

Defendant's motion to dismiss Counts IV, V, VI, VII, and XVII based on untimeliness is denied.

## B. Qualified Privilege

Lastly, Defendant moves to dismiss Counts IV, V, VI, VII, and XVII of Plaintiff's Second Amended complaint pursuant to Rule 12(b)(6) based on the qualified privilege for attorneys under Illinois law. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to "'test the sufficiency of the complaint, not to decide the merits'" of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "In considering a motion to dismiss, a court must accept as true all the well-pleaded material facts in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff." *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 399 (N.D. Ill. 1994); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendant argues that under *George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, an attorney is granted a qualified privilege against non-client claims. 719 F.2d 1326 (7th Cir. 1983). "[P]ublic policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect." *Id.* at 1334 n.7 (citing *Schott v. Glover*, 440 N.E.2d 376, 379-80 (Ill. App. Ct. 1982)). However, an attorney acting in his or her professional capacity may be held liable to third parties when "'the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist.'" *Id.* (quoting *Schott*, 440 N.E.2d at 380).

9

Illinois courts have interpreted malice to "include a desire to harm, which is independent of and unrelated to the attorney's desire to protect his client." *Schott*, 440 N.E.2d at 380. The *George A. Fuller* Court interpreted *Schott* as requiring that Plaintiff prove two separate things: first, that the attorney or corporate officer "induced the breach to further their personal goals or to injure the other party to the contract;" and second, that attorney or corporate officer "acted contrary to the best interest of the corporation." *George A. Fuller*, 719 F.2d at 1333.

Defendant argues that to meet this standard, Plaintiff would have had to allege in his Second Amended Complaint facts sufficient to support each of these requirements. Fed. R. Civ. P. 9(b) provides that when a claim against an attorney is filed in federal district court sitting in diversity, "malice . . . may be averred generally." Fulfillment of specific state substantive standards is irrelevant under this notice pleading system; a mere allegation will suffice. *Conley*, 355 U.S. at 45-46. Plaintiff meets this requirement by alleging "actual malice" in paragraph 106(l), which is incorporated by reference into Counts V, VI, VII, and XVI.

Defendant also argues that Plaintiff has pleaded itself "out of court" because the Second Amended Complaint alleges that Lewis Rice acted "for the sole benefit of Lewis Rice's client," rather than "contrary" to the best interests of the client. (Lewis Rice Mem. Supp. Mot. Dismiss at 17) (citing Second Am. Compl. ¶¶ 106(i), 113(r), 199(r), 126(r).) But the issue in dispute is not whether Lewis Rice acted contrary to the "rights of others" nor whether Lewis Rice acted consistently with what the client *requested*, as Defendant argues, but whether pursuing illegal means to further a client's objectives is contrary to the *best interests* of that client. A reasonable interpretation of the phrase, "contrary to the best interests of the corporation," may include acting solely for one's own monetary benefit, as well as adopting illegal means to further the goals of one's client. *See Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1995) (stating

10

privileged actors are "unjustified in using illegal means to induce a breach of contract").

This case is similar to *Janusz v. Fasco Industries, Inc.*, where the Plaintiff brought a cause of action for tortious interference, and to circumvent Illinois qualified privilege law, alleged that the Defendant corporate officer acted contrary to the company's "best interest." No. 97 C 7976, 1998 WL 246449, at *3 (N.D. Ill. May 1, 1998). The court held that the malice/best interest pleading requirement was satisfied by allegations that the attorney "filed incorrect tax returns for the company to further his own personal goals." *Id.* The court noted that "it could reasonably be inferred from the complaint that violating applicable tax laws is against the best interest of the corporation." *Id.* Similarly here, Plaintiff alleges that Lewis Rice was motivated by a thirty percent commission dependent upon the closing of Gibson's purchase of twenty-three grocery stores, and that Lewis Rice knowingly chose to pursue illegal means to complete that purchase. As in *Janusz*, this Court can reasonably infer from these facts that Defendant acted contrary to the best interests of its clients. Accordingly, Defendant's motion to dismiss Counts IV, V, VI, VII, and XVII based on qualified privilege is denied.

## CONCLUSION

For the reasons stated above, the Court denies Defendant Lewis, Rice, Fingersh, L.C.'s Motion to Dismiss [doc. no. 169-1].

**SO ORDERED**  ENTERED: 3/10/04

HON. RONALD A. GUZMAN
United States Judge